## COURT OF APPEALS, JUNE TERM, 1822.

### WARFIELD vs. WARFIELD, et al.

APPEAL from the Court of Chancery. It appears by the record that at September term 1813, the seven children of Doctor *C. A. Warfield*, by their petition to the chancellor, prayed that a commission might issue to divide amongst them the real estate of the deceased. The petition stated the death of Doctor *Warfield*, and that the petitioners were his heirs. On the same day the chancellor passed a decree for dividing the lands into seven equal parts; that is, among all the children, and a commission issued accord-

On a petition by the seven representatives of a deceased intestate, for a partition of his lands, under the act of 1786, ch. 45, the chancellor decreed, that partition should be made—but this decree, embracing only the lands of which the intestate *died seized*, he having conveyed lands by way of

June 1822.

Warfield
vs
Warfield

advancement to H. R. W. one of the representatives. a new bill was filed by the children not advanced, against H. R. W. calling upon him to bring such advancement into *hotchpot*. By his answer he did not elect to bring in the part conveyed to him, nor did he refuse to do so, but insisted that he had a right to elect after the commissioners should make their valuation. The chancellor considered the answer as an election not to bring in the part conveyed, and decreed the partition to be made of the lands of which the intestate died seized, among the other representatives, excluding *H. R. W.* From this decree he appealed, but dismissed his appeal on the suggestion of the court of appeal, that an amendment ought to be made so as to bring the question before the court. He afterwards by his petition to the chancellor stated that his answer was misconceived, and prayed leave to amend it, and to elect to bring into hotchpot his advancement at the value of the advancement at the time he received it; which was refused by the chancellor. A commission for partition having been issued and executed, the chancellor ratified and confirmed the return From that decree *H. R. W.* again appealed—*Held*, that *H. R. W.* ought to have been permitted to amend his answer; and that he was entitled to make his election in the manner set forth in his petition. That the partition made, remain un-

ingly. Afterwards a letter from the commissioners to Richard Snowden, who had married one of the daughters, of Doctor *Warfield*, was filed, in which they decline executing the commission, and assign as their reasons, that they were directed to divide into seven equal parts the land only of which Doctor *Warfield* died seized, without any mention of the lands deeded to *Henry R. Warfield*, and Samuel Thomas, (who had married one of the daughters,) which if divided without those lands being taken in, would not effect the object the parties had in view. They therefore recommended an alteration of the commission, &c. Whereupon the chancellor passed an order, saying the decree could not be altered, and suggested another mode of proceeding, viz. That if the persons advanced state their agreement, and join in a petition with the other parties, a commission might be framed accordingly, otherwise the parties not advanced might petition, making the others defendants, and calling on them to make the election; and that the petition might also pray that the former decree should be set aside. In January 1814, the bill, in the case now before the court, was filed against *Henry R.* and *Louisa Warfield*, by the rest of the children. This bill states the death of Doctor *Warfield*, intestate; that he left seven children; that he conveyed certain lands to *Samuel Thomas*, one of the complainants, who married one of his daughters, and certain other lands to *Henry R.* one of the defendants; that these conveyances were made as advancements; that *Samuel Thomas* is willing to bring his part into *hotchpot*; that *Henry R.* had agreed at one time to bring his part into *hotchpot*, and with that view the petition first mentioned had been prepared and agreed to by all the children, and the business entrusted to him as counsel. The bill also states the proceedings on the first petition; that the complainants were advised that no commission to divide could issue until *Henry R.* should make his election whether to bring his land into *hotchpot* or not. The bill prays that no further proceedings may be had on the former petition; that the decree may be set aside, and the petition dismissed. It then proceeds to state, that the defendants have refused to join in the second application; that *Henry R.* has refused to make his election, and prays that he may be compelled to make his election, and that commission may issue to divide the land into seven equal parts, if

he elects to come in, and into six if he refuses. The answer of *Lovisa Warfield* is not material to the point in dispute. The answer of *Henry R. Warfield* admits the proceedings on the former petition; he thinks it was the proper mode of proceeding, and assigns his reasons; but does not elect to bring in the part conveyed to him, and does not refuse to bring it in, but insists that he has a right to elect after the commissioners make their valuation. A commission issued, testimony was taken under it and returned, and the cause submitted to the chancellor.

KILTY, Chancellor, (December term 1816.) The manner proposed by the answer of the defendant, *H. R. Warfield*, of making the partition and election, is not, in my opinion, such as he is entitled to; and considering the claim of his right thus set up as an election not to bring the part conveyed to him into hotchpot, it is adjudged proper to divide the estate amongst the other heirs, including therein the part conveyed to *S. Thomas—Decreed*, that the defendant, *H. R. Warfield*, be precluded from all participation in or share of the real estate of *C. A. Warfield*, deceased, in the proceedings mentioned; and that the real estate of *C. A. Warfield*, deceased, of which he died seized, including the land conveyed by him to the complainant, *S. Thomas*, be divided into six parts, and that commission issue, &c. From which decree the defendants appealed to this court; and at June term 1818, the cause was argued before BUCHANAN, JOHNSON, MARTIN, and DORSEY, J.

*Taney* and *Winder*, for the appellants, contended, that the chancellor ought not to have passed the last decree while his former decree was in force, and the cause still pending on the former petition. They cited 2 *Madd. Chan.* 356, 357, 408. *Cooper's Plead.* 88, 269, 272; and *Hollingsworth et ux vs. M'Donald et al.* in this court, at December term 1807.

*Pinkney* and *Magruder*, for the appellees, contended, that the first was not a decree to be enrolled, but was merely an order. They cited *Cooper's Plead.* 266, 268, 2 *Harr. Chan.* 327. 2 *Atk.* 383.

The appellants' counsel dismissed the appeal, on the suggestion of the court that an amendment to the proceedings might be had in the court of chancery, so as to bring the

---

JUNE 1822,

Warfield
vs
Warfield

altered, and leave be given to *H. R. W.* to amend his answer as prayed; and when so amended, that proof he taken of the value of the land given in advancement at the time when it was so given; and if it was of less value than the equal proportion of *H. R. W* in the whole real estate, then the parties, among whom the partition was made, shall pay severally to *H. R. W.* such sum of money as will be sufficient to make his share of the estate equal in value of one full seventh part of the estate at the time of the valuation already made

true and real point in controversy fully before them, as connected with the question as to the period at which the valuation of the advancement to *H. R. Warfield* was to be made.

*H. R. Warfield* afterwards, in July 1818, by his petition to the chancellor, states, that by the decree of December 1816, his answer is considered "as an election not to bring the part of his late father's estate, as conveyed to him, into hotchpot," and therefore he is by the decree precluded from all participation in the real estate of his father. That this view of his answer is one which he was not aware could be taken of it, for he always was ready, and now is ready and desirous to bring his said part into hotchpot, claiming to bring the same in at the value it was when conveyed to him. He therefore prayed the chancellor to permit him to answer further, and to state, that he does elect to bring into hotchpot his advancement received from his father at the value of the said advancement at the time he received it. That he had dismissed the appeal, which he prayed from the interlocutory decree, and there had not been any return of the commission, to make partition, issued under that decree, &c.

Kilty, Chancellor, (December term 1818.) A petition was filed on the 1st of July 1818, by *H. R. Warfield*, one of the defendants, for permission to answer further in the cause, and to state, that he does elect to bring into hotchpot his advancement in the manner therein mentioned. Which petition came on to be heard at the present term, and was argued by counsel on each side. It appears, from the proceedings, that a decree was passed at December term 1816, for a division of the real estate of *C. A. Warfield*, deceased, into six parts, excluding the defendant *H. R. Warfield*, for the reasons therein assigned. During the same term two depositions were filed on behalf of the defendant, and admitted by the opposite counsel to be received in evidence. They related to the improved value of the land conveyed to him by *C. A. Warfield* in 1797; and on motion and on hearing, the court decided that the decree should remain unaltered. An appeal was made from the decree to the court of appeals, which the petitioner states that he dismissed, as was admitted in the course of the argument. On the dismissal of the appeal, a commission is-

sued in pursuance of the decree, which has been executed and returned since the filing of the present petition, and no exceptions have been made thereto, except so far as the petition may be so considered. On that part of the petition, for permission to put in an amended answer, it is to be observed, that the practice of the court is less strict than it is in *England*, and that a discretionary power is exercised to meet the merits of the case, whenever it can be considered open or liable to be opened. In the case cited, of *Weems* and *O'Reilly*, and in that of *Boyce* and *Gassaway*, I did not discover any certain rule to be drawn from the *English* practice. But I incline to the opinion, that the interlocutory decree in this case might be opened, if the answer preferred was such as the merits of the case required. The permission might, however, have been subjected to the terms respecting the intermediate costs, so as to include those of the execution of the commission. But I am of opinion, that the kind of answer proposed in the petition is not such as to meet the merits of the case, or to call for the interference of the court, more especially after the declaration contained in the decree, and the intimation of the sentiments of the court of appeals. The answer proposed in the petition, is somewhat different from the one filed before by the same defendant, but does not appear to be a proper answer to the petition under the act to direct descents. It is an election made subject to a proviso or condition, and necessarily implies a refusal to elect, without a compliance on the part of the court with that condition, according to the maxim, that *"expressio unius est exclusio alterius."* I do not recollect any case in this court, in which the *fifth* section of the act to direct descents, 1786, *ch.* 45, which provides "that any child or children of the intestate, or their issue, having received from the intestate any real estate by way of advancement, may elect to come into partition with the other parceners, on bringing such advancement into hotchpot with the estate descended; but such child or children, or their issue, shall not be entitled to claim a share by descent, without bringing such advancement into the common stock or hotchpot, if there be any child or children unprovided for," was acted on, except that of *Sprigg* and *Sprigg*, cited in the argument, and I shall therefore state my views of that part of the law connected with the common law. In *England,*

parceners were only by common law or by custom. By common law they could not be such otherwise than by descent. And only females could, in the first instance, be parceners, (making together but one heir,) because in case of a son the land descended to him alone. The act of 1786, *ch.* 46, was passed in order to change the course of descent, and by directing it to be to the children equally, it in effect made them all parceners, and they are so called in the *fifth* section. It is to be presumed that the framers of the act were familiar with the law as to land received in frank-marriage, and that in creating parceners of a new kind or by statute, they saw the necessity of permitting such of the co-heirs, as might have received any real estate by way of advancement, to come into partition, on bringing such advancement into hotchpot, and of excluding them from a share by dissent if they did not bring such advancement into the common stock or hotchpot. Therefore, although gifts in frank-marriage had fallen into disuse in *England,* as stated by *Blackstone,* yet in a provision for the division of lands, the former doctrines, applicable to these gifts and coparcenery of land, ought to be used in the construction of this act, and not those (where they differ,) applicable to the *British* statutes, and our own acts, for the distribution of the personal estates of intestates. It is laid down by Lord *Coke,* that when the lands are put in hotchpot, and the value of each are known, the donees shall retain the land given in frank-marriage, and shall have so much of that in fee descended, as will, together with land given in frank-marriage, make their share equal to that of the other parcener. It is also laid down by the same author, that it is clear that the value shall be according as it was at the time of the partition, assigning his reasons therefor. According to this authority, the condition on which the defendant's election is made to depend, is not such as the law entitles him to. But supposing it doubtful, or that the value ought to be according as it was at the time of the gift or advancement, yet it is a point on which the court is not obliged to decide at the present state of the proceedings. The provisions of the *fifth* section of the act are for the benefit of a co-heir who may have received real estate by way of advancement of less value than any one of the parts descending to the other heirs. They cannot force him, but he may elect to

come into partition with the other parceners, on bringing such advancement into hotchpot, &c. And here I have to observe, that I do not comprehend the distinction made between the words "advancement and estate," in the answer filed, and in the argument of the defendant. I am of opinion, that the person so disposed, must elect to come into partition, &c. in the words of the act, or to the same effect, leaving for further inquiry and decision the manner of proceeding as to the issuing of the commission, and the manner of valuing and dividing, which are open to exception, and of course to the decision of the court thereon. The condition required in the answer filed, and in the one proposed to be filed, would amount to a negotiation with the court, which is not the usual mode of proceeding. And therefore, in making the decree in 1816, as the condition could not be complied with by the court, I considered it as an election not to bring the part conveyed into hotchpot, or as it might have been more accurately expressed, as not making an election to bring it in. Although the condition is now varied in terms, it amounts in substance nearly to the same thing. And the defendant comes under that part of the law which declares that such persons shall not be entitled to claim a share by descent, without bringing such advancement into hotchpot. The ground of my refusal to grant the petition is, that if an answer, such as is proposed therein to be made, was regularly filed in the cause, I should not consider it as an election to come into partition, and should decree on it as I did on the first answer. It was urged in argument, that the defendant would be barred of relief if the amendment was not allowed, on which the main question could be fairly brought out and finally settled. This remark would have weight if the amendment was such as ought to be offered or ought to be received, but as it is, the consequence, whatever it may be, will be brought on by the defendant himself. He has had full time for consideration, and has had the opinion or intimation of the court of appeals. He has availed himself of his own professional knowledge, in addition to the advice of his counsel, and in lieu of one condition or requisition, he has only substituted another liable to the same objection. The commission has been executed and returned, and an allotment of the six parts agreed to by the parties, excepting the defendant, *H. R. Warfield;* and

June 1822. the permission to put in the answer proposed therein not being granted, a final decree will be made. *Decreed*, that the return of the commissioners, and the division by them made, be and the same is hereby ratified and confirmed. Also *decreed*, that *Richard Snowden* shall hold in severalty in right of his wife *Eliza*, who is deceased, and not jointly with the other parties to this suit, all that part of the said real estate distinguished on the plot, and the return of the commissioners, by the number one, free, clear, and discharged from all claim of the other parties to this suit. And, &c. &c. From this decree the defendant *H. R. Warfield* appealed to this court.

The cause was argued at the last June term, before BUCHANAN, EARLE, JOHNSON, MARTIN, and DORSEY, J.

*Taney* and *Winder*, for the appellant. 1. The appellant was not bound to bring in the land itself given to him by his father, but the value of it, such as it was at the time he received it. 2. He was entitled to make his election in that form, and was not bound to make his election in general terms. 3. The chancellor erred in excluding the appellant from the partition on his answer, in which he claimed the right to decide at a future time. 4. The chancellor ought to have allowed the appellant to amend his answer as he proposed in his petition. On the *first point* they referred to the act of 1786, *ch.* 45, *s.* 5. 3 *Bac. Ab.* tit. *Executors and Administrators*, (K) 76. *Kircudbright vs. Kircudbright*, 8 *Ves.* 51. 2 *Blk. Com.* 190. On the *fourth point* they referred to *Boyce vs. Gassaway*, December 1818, and *Weems vs. O'Reilly*, October 1819.

*Pinkney* and *Magruder*, for the appellees. 1. The appellant, by not electing whether or not he would bring his advancement into hotchpot, thereby refused to elect. 2. The land itself ought to have been brought in; and if not, then the value thereof at the time of the partition. They cited 3 *Jacobs' L. D.* tit. *Hotchpot. Co. Litt. s.* 273. The acts of 1715, *ch.* 39, *s.* 4, 5; 1798, *ch.* 101, *sub ch.* 11, *s.* 6. *Toller on Executors*, 176. They also contended that no appeal would lie from the refusal of the chancellor to permit a defendant to amend his answer.

*Curia adv. vult.*

The Court at this term, being of opinion that there was manifest error in the decree of the chancellor in refusing to allow the defendant, *H. R. Warfield*, to amend his answer agreeably to the prayer of his petition filed in the cause for that purpose, and that he was entitled to make his election in the manner set forth in his petition—*Decreed*, that the decree of the chancellor be reversed, with costs; and that the partition in the proceedings mentioned be and remain unaltered, and that the chancellor pass an order giving leave to the said *H. R. Warfield* to amend his answer according to the prayer of his said petition; and upon the filing of the said amended answer, the chancellor is directed to pass an order directing proof to be taken of the value of the lands given in advancement to the said *H. R. Warfield*, at the time when the same were so given; and if upon such proof the land so advanced shall appear to have been of less value than the equal proportion of the said *H. R. Warfield* in the whole real estate, then, that the parties, among whom said partition was made, or their legal representatives or assigns, shall be decreed to pay severally, to the said *H. R. Warfield*, such sum or sums of money as shall be sufficient to make his share of the said estate equal in value to one full seventh part of the said real estate, at the time of the valuation already made by the commissioners. That if, upon such partition, so made as aforesaid, *S. Thomas* hath received any addition to the advancement by the said *C. A. Warfield*, in his life-time, as mentioned in the proceedings, then that the said *S. Thomas* pay to the said *H. R. Warfield*, such sum of money as will be his just proportion, in reference to such addition so received by him. And that the chancellor do, from time to time, pass all the necessary orders, directions and decrees, for carrying this decree into execution.

JOHNSON, J. dissented.

DECREE REVERSED, &c.