SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, EXECUTOR, &C., *vs.* WILLIAM BAKER, JR., *et al.*

*Distribution of Decedent's Estate in Equity—Jurisdiction of the Orphans' Court—Construction of Will—Advancements—Hotchpot.*

The Orphans' Court has no jurisdiction to determine whether the distributee of an estate has received an advancement in real estate or the value of such advancement; and when a will directs that all advancements, real or personal, shall be brought into hotchpot, the executor has a right to apply to a Court of Equity to determine the questions relating to such advancements, and to make in that Court final distribution of the estate.

A testator devised a share of his estate to his son, W., and directed that it should include a tract of land " of which the estimated value

is charged against him on my books." The executor filed a bill in equity alleging the passage of administration accounts in the Orphans' Court; that the devisee, W., was charged on the testator's books with a certain sum as the value of said tract of land and with another sum of money ·advanced; that advances were charged against other children of the testator; that the amount of such advance should be ascertained in equity, and that the distribution of the estate should be made in that Court. The bill prayed that the Court would assume jurisdiction and direct the executor in the administration of the estate. *Held,* that since the Orphans' Court has no jurisdiction to deal with advancements in real estate, the Court of Equity has jurisdiction to determine whether the advances to W. were in realty or personalty, and to construe the will of the testator, and that the Court should under these circumstances retain the case and direct the final distribution.

Cross-appeals from a decree of the Circuit Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*George R. Willis* and *John J. Donaldson,* for the executor of Chas. J. Baker.

There is but one question presented in this case, viz.: Whether a Court of Chancery has jurisdiction to give the relief prayed in the bill. On the demurrer, while it is not denied that chancery will not take jurisdiction of the administration of a decedent's estate, *unless there be special circumstances,* yet here it is submitted that there are such special circumstances set forth in the bill.

It is shown that the testator directed by his will advances made to his several children to be charged against them respectively, and it is further shown that in the case of at least *one* child and residuary legatee and devisee, Wm. Baker, Jr., there was an advance in real estate. That in the case at bar the deceased was already owner of the land conveyed to the son advanced, and in the deed to him recited a money consideration, which he charged to such son on his books, does not take this case out of the decision of the Court of Appeals in *Hayden* v. *Burch,* 9 Gill, 79, in

which the father bought a tract of land, paid for it with his own money, but had the title conveyed to the son. It was there held that this was an advance in real estate. The case at bar is far stronger, as the father here paid out no cash, but conveyed to the son the real property, of which the father was then owner.

The case at bar not being one of technical advancement, which, of course, is confined to intestacy (*Pole* v. *Simmons*, 45 Md. 246), but, accurately speaking, of hotchpot directions in a will, of course the terms of the will must govern. These seem to be conclusive. In the final division of the testator's residuary estate, his son, William, Jr., is to be charged, not with such a sum (being the purchase money of the land in question), but with " *the country place called 'Fremont,' adjoining 'Athol,' and containing say about eighteen acres*, of which the estimated value is charged against him on my books." By the very terms of the will, therefore, the son advanced is to be charged with an advance in *real estate.*

And this view is re-enforced by the fact that the gift of the residue is of his property both " *real* and personal," and the hotchpot directions apply to *both.* Even were this construction doubtful, yet if the analogy of directions for conversion is to guide us, the law is clear that " where there is a doubt as to the intent of the testator in an order or direction for the conversion of land into money, the original character of the property will be retained." *Keller* v. *Harper*, 64 Md. 74; *Lynn* v. *Gephart*, 27 Md. 547; *State* v. *Nichols*, 10 G. & J. 27; *Society, etc.,* v. *Smith*, 56 Md. 362; *Farmer* v. *Spell*, 11 Rich. Eq. 541.

As was said by the Supreme Court of Massachusetts in *Shearer* v. *Shearer*, 98 Mass. 107 : " There are no equities between heirs and distributees, even under our laws, which can call into exercise or quicken the powers of the Court for the conversion of realty into personalty."

Starting, then, with the position, which we submit is established, that the advance to Wm. Baker, Jr., not only was,

but by the hotchpot directions of the will was to be treated as an advance in real estate ; we find it settled law that an advance in real estate cannot *in any way* be dealt with by the Orphans' Court. *Stewart* v. *Pattison*, 8 Gill, 58; *Hayden* v. *Burch*, 9 Gill, 79. But the testator directs that all the advancements, both *real and personal,* shall be brought into hotchpot. The Orphans' Court clearly cannot deal with *all* the advances together, as it has no jurisdiction to deal in any respect with a *real* advance, and can pass no binding order or decree in relation thereto.

A Court of Equity has undoubted jurisdiction to deal with the *real* advance, and also jurisdiction to deal with the *personal* advances where special circumstances exist. *Hewitt's case,* 3 Bland 184; *Woods* v. *Fuller,* 61 Md. 457; *Macgill* v. *Hyatt,* 80 Md. 253; *Alexander* v. *Leakin,* 72 Md. 199. In the case last cited, it was only a question of a decedent's *personal* estate that was to be dealt with, but because under the law as it then stood, an Orphans' Court could by no process bind non-resident parties in interest, the Chancery Court entertained jurisdiction as a Court " where all parties will be afforded ample protection from future responsibility and litigation."

In the same opinion, the Court states the established principle as to the ordinarily exclusive jurisdiction of the Orphans' Court, but goes on to say : "But it was long ago recognized as possible that cases might arise in the distribution of decedent's estates which would demand the large powers of an Equity Court properly and satisfactorily to deal with the *subject-matter,*" " or the parties." (72 Md. 202.) It is the former of the two cases, so put forward by the Court that we have here, viz., the *subject-matter,* all the residue *real and personal* to be dealt with, subject to hotchpot directions in which all advances, *real* and *personal,* are to be dealt with *together.* With the *whole* of this *subject-matter*, it is a *concessum* that the Orphans' Court cannot deal. On the other hand, it is unnecessary to cite authorities that a Chancery Court has full *powers* to deal

with the whole *subject-matter.* As to *jurisdiction,* no ground
of it is older or better established than the fact that it is
the *only* tribunal that can deal with the *whole* of a given
subject-matter. *Phelps' Eq.,* 258; *Lucas* v. *McBlair,* 12 G.
& J. 1; *Brooks* v. *Brooks, Ibid,* 306; *Lee* v. *Admr. of Bote-
ler, Ibid,* 326. ·

But apart from all this, upon the face of the amended
bill and exhibit is shown another undoubted ground of
chancery jurisdiction, viz., a necessity for a *construction* of
the will. We are dealing with a case of hotchpot direc-
tions in a will. The very question at issue is, whether it
was the *intention of the testator* that the advancement to one
of the sons was to be treated as an advancement in *realty,*
or an advancement in *personalty* (money). How is this *in-
tention* to be ascertained? Only by the *terms of the will*
itself, taken with such extrinsic proof as is admissible under
the rules of evidence. So, even with the advances in
money, the questions of what the advanced children are to
be charged, whether they are to be charged with interest
(which is not chargeable on *technical* advancements in case
of intestacy), and from what time, are all questions of *inten-
tion* (and so of construction) to be determined from the face
of the *will,* taken with such extrinsic proof as under the
rules of evidence is admissible. The questions then being
of the *construction* of the will, it is beyond doubt that the
Orphans' Court can have no jurisdiction to pass upon
them. *Michael* v. *Baker,* 12 Md. 169; *Schull* v. *Murray,*
32 Md. 9.

The question is how did the testator intend the advance
to be taken, whether as real or personal. The will directs
that Wm. Baker, Jr., shall be charged with the *real prop-
erty itself,* of which the " estimated " value is charged to
him on testator's books. Why " estimated?" Undoubt-
edly because the testator had in mind the well-established
principle that as to advancements in cases of intestacy (as
well as under hotchpot provisions, in the absence of inten-
tion appearing to the contrary) the value of the advance-

ment is to be taken as of the time when received.   *Watson*
v. *Watson*, 33 Beav. 576; *Clark* v. *Willson*, 27 Md. 693;
*Warfield* v. *Warfield*, 5 H. & J. 459; *Alex. Ch. Prac.*, 173;
*Code P. G. L.*, Art. 46, sec. 31; *Code P. G. L.*, Art. 93,
sec. 125.   And the further principle that the testator's
statement of *amount* of advances is not conclusive on lega-
tees and distributees.   *Whately* v. *Spooner*, 3 D. & J. 542;
*Tomlin* v. *Underhay*, 22 Ch. D. 495; *Musselman's Est.*, 5
Watts. 9; *Hook* v. *Hook*, 5 Watts. 80.

Undoubtedly, then, the whole question of value of the
*advance* is open between the son advanced and the other
legatees and devisees.   Where can jurisdiction be found in
the Orphan's Court to deal with this?   The mere recital
of consideration in the deed (which it is not contended for
a moment was *paid*) concludes no one.   *Bonce* v. *Slemp*,
82 Va. 352; *Stewart* v. *State*, 2 H. & G. 114; *State* v.
*Jameson*, 3 G. & J. 442; *Clark* v. *Willson*, 27 Md. 693;
*Parks* v. *Parks*, 19 Md. 323.   And of course the mere ac-
knowledgement of its receipt can have no greater effect.

*Edward I. Koontz* (with whom were *Charles Marshall*
and *George Whitelock* on the brief), for William and Chas.
E. Baker.

The executor, which elected to go to hearing upon bill
and plea, without traverse by replication to the allegations
of the plea, can on these appeals question only the suffi-
ciency of the plea, and should not be heard to dispute its
averments of fact, even though, if the plea were insufficient,
the plaintiff might perhaps be permitted to do so by way
of denial of the allegations of its own bill.   *Rouskulp* v.
*Kershner*, 49 Md. 521, 522.

We contend that, for the following reasons, the bill is
fatally defective and should have been dismissed *in toto* on
the demurrer of Charles E. Baker, even without the plea
of William Baker, Jr.   However willing the other children
of Charles J. Baker may be to have the final administration
of his estate conducted under the jurisdiction of a Court of

Equity, William Baker, Jr., and Charles E. Baker have declined to consent to the administration of the estate in equity, because the executor has utterly failed to furnish a single valid reason for the exercise by a Court of Chancery of the jurisdiction which it has over the estates of decedents in certain special cases. *Hewitt's case*, 3 Bl. 186; *Woods* v. *Fuller*, 61 Md. 459; *Alexander* v. *Leakin*, 72 Md. 202, 203 and 205. Neither in its original nor amended form does the bill disclose a single special circumstance, to warrant the conduct of the executor in refusing to go on and complete the final administration of the estate in the Orphans' Court for Baltimore County, where it has thus far returned inventories, paid debts, distributed legacies, reported sales of real estate, passed six administration accounts, and has without difficulty or encountering any obstacle from any of the parties to this cause successfully administered all of the affairs of the estate down to the present time.

It is apparent from the original bill and the will that all of the cash sums charged by the testator to his children including the $14,000 charged to William Baker, Jr., and representing the stated consideration for "Tremont" were intended by the testator, at the time when they were advanced, to be payments on account of the shares of the respective recipients thereof in his personal estate. It was not necessary to ask the permission of a Court of Equity to deduct from the several shares the advances made on account thereof; it was the bounden duty of the executor to do so and it had no ground to anticipate, and does not even intimate that it expected the least opposition in the discharge of that duty. *Smith* v. *Donnell*, 9 Gill, 87; *Hoffman* v. *Hoffman*, 88 Md. 62.

Thus opposed under the first demurrer, and being driven to amend by the Circuit Court of Baltimore City, which was not willing to assume jurisdiction of the personal estate, merely because the executor desired it to do so, the plaintiff to eke out its case averred in the 13th paragraph

of the amended bill that the advance to William Baker, Jr., was in part in real estate, and that the Orphans' Court had no jurisdiction to deal with the same, or to pass any decree or order in the premises. This allegation of matter of law thus extorted by the chancellor, and evidently furnishing the last and only prop to the case, is directly contradictory to the distinct and antecedent allegations of fact upon which it is based, whether the Court look to the original bill or the amended bill, or collate them together. That the advance referred to was not intended by the testator to be an advance in real estate, is easily demonstrable from the well-pleaded facts in the cause. The testator, by his own deliberate act, changed the property character of the advance in question and transmuted it from realty into personalty. The $14,000, representing the purchase price of Tremont, should be regarded as an advancement in personalty, and not in realty, for the obvious reason that it was so treated by the testator himself, whose acts, it is submitted, are binding upon his executor, however disposed the latter may be to pursue in the liquidation of the estate a mode of settlement wholly inconsistent with the settlement which the testator saw fit to make during his lifetime.

It will be just as easy for the executor to deduct the $16,500 from the share of William Baker, Jr., in the passage of the next administration account in the Orphans' Court as to have it deducted in the statement of an auditor's account in the Circuit Court of Baltimore City. · Whatever unseen and imaginary perils may be incurred by the executor in thus discharging its plain duty in the one Court would certainly confront it in the other, and whatever benefit and advantage the testator's children may, in the present advanced stage of the administration, derive from the supervision of a Court of Chancery, will not be denied to them in the Orphans' Court, which was organized and whose powers have been gradually extended for the very purpose of settling the estates of decedents. The jurisdiction of the Orphans' Court, while limited and statutory,

must be held to embrace every power which is necessary for the proper discharge of its conceded and ordinary functions. It is patent on the face of the bills of complaint that there is not a single act which the executor will be called upon to perform in the final administration of the estate which is not within the ordinary and currently exercised jurisdiction of the Orphans' Court. *Pole* v. *Simmons,* 45 Md. 246; *Smith* v. *Donnell,* 9 Gill, 87; *Manning* v. *Thruston,* 59 Md. 218; *Macgill* v. *Hyatt,* 80 Md. 256-7.

BOYD, J., delivered the opinion of the Court.

The Safe Deposit and Trust Company of Baltimore, as executor of Charles J. Baker, filed a bill in equity against the sons and only daughter of Mr. Baker and the children of the latter, in which the Court below was asked to take the jurisdiction and direct the complainant in the further administration of the estate. The bill alleges that the executor had paid all the debts and legacies, had settled six accounts in the Orphans' Court of Baltimore County and now had a large amount of property and cash for distribution. Most of the adult defendants filed their answers admitting the allegations of the bill and consenting to the passage of a decree as prayed, but William Baker, Jr., and Charles E. Baker demurred to the whole bill. The demurrer was sustained, and plaintiff was granted leave to amend and an amended bill was filed. William Baker, Jr., filed a plea to so much of it as charges new or additional matters and demurred to the rest. Charles E. Baker demurred to the whole amended bill. The principal difference between the original and amended bills is that the latter charges that the testator made advances to William Baker, Jr., one of his children, in real estate as well as personalty, and hence, it is alleged, the Orphans' Court had no jurisdiction to deal with the whole estate so as to bind all parties in interest, and adequately protect the executor, as it cannot deal with real estate or pass any decree or order in the premises, and that the further administration of the

estate should be carried on in a Court of Equity. The plea and demurrer were filed to deny the jurisdiction of a Court of Equity. The Court below was of the opinion that the only question it could consider was " whether the conveyance of the real estate referred to in the bill is an advancement and its proper valuation," and decreed that William Baker, Jr., was to be charged with an advancement in real estate of the value of $14,000, but dismissed the original and amended bills as to all the other relief therein prayed. From that decree the Safe Deposit and Trust Company, and William Baker, Jr., and Charles E. Baker entered cross-appeals.

The will begins with a declaration of the testator of his intention to dispose of all his estate, real and personal, to which he added " which I estimate as follows, viz., real estate and improvements thereon, two hundred and thirty thousand dollars, personal estate (including debts due to me and also advances made to several of my children), after deducting all my debts and liabilities, about five hundred thousand dollars," etc. After directing his debts to be paid and providing for his widow and a number of legatees, the testator then made the following provision : " Fourth. All the rest, residue and remainder of my estate, real and personal (including therein, as above said, any advances heretofore made to any of my children), I give, devise and bequeath as follows, viz :

" One equal eighth part to my son, William Baker, his heirs, personal representatives and assigns, which shall include the country place called ' Tremont,' adjoining ' Athol ' and containing, say, about eighteen acres, of which the estimated value is charged against him on my books," etc. The bill alleges that William Baker, Jr., stands charged upon the books of the testator, as of January 1st, 1879, with cash amounting to the sum of $16,500.00, " which it is assumed, from all the facts disclosed by the exhibits filed herein, to be made of cash advanced $2,500, and a country place called ' Tremont' (adjoining ' Athol,' the country

place whereon the deceased lived), containing about eighteen acres of land at $14,000, and upon which total charge of $16,500 the said William Baker paid interest to December 31st, 1893," and it then names amounts alleged to have been advanced to some of the other children, including $30,000 to Charles E. Baker, and speaks of an unliquidated claim against William and Charles E., as surviving partners of the firm of Baker Brothers Company, of which the testator was a partner.

It must be, and is, conceded that a Court of Equity will not take jurisdiction of the administration of a decedent's estate, unless there be some special circumstances which prevent the powers of the Orphans' Court from being altogether adequate to afford complete protection and relief, as the latter Court is the one organized for the purpose of administering estates. But in many respects the jurisdiction conferred on that Court, which is statutory and limited, is insufficient to enable it to act or to furnish the protection which those in charge of or interested in estates are entitled to. With the exception of such powers as are expressly given it by statute, it is not authorized to deal with the real estate of decedents. It was said in an early case in this State (*Stewart* v. *Pattison's Executor*, 8 Gill, 58), in speaking of an advancement in real property to a son of the testator, that " with the real estate of the deceased, when and how the deceased has disposed of that estate to his children, the Orphans' Court has no concern. As one of the children of the deceased, he claims a child's portion of the personal estate, and even if there had been a total intestacy, it is by no law made the duty of the Orphans' Court to ascertain what portion of the real estate he received. In a different form, and in a different *forum*, controversies in regard to the real estate must be settled." James Pattison, the testator, after making a will in which he had devised certain lands to his son Jeremiah, conveyed it to him by deed, the consideration of which was stated to be natural love and affection and the sum of $20.00. The executor

had a surplus of personal property in his hands for distribution and filed a petition in the Orphans' Court for an order directing him how to distribute it. The petition alleged that Jeremiah had given an obligation of three thousand dollars to his father for the property, which was alleged to be worth about $20,000. The Orphans' Court determined it was an advancement to him and held he was not entitled to share in the distribution of the personal estate, but on appeal that action was reversed and the law announced as above quoted. That case was followed in *Hayden* v. *Burch*, 9 Gill, 79, where the father of the appellant had purchased and paid for some real estate, which the vendor conveyed directly to the son. In an effort to have its value deducted from the son's share of personalty it was held to be an advancement of real estate, and that the Orphans' Court was right in declining to act upon it. After referring to some cases in this State it was said that "The assertion that the distribution of the realty with the personalty in hotchpot is a legal or proper subject for the action of an Orphans' Court is not supportable by those cases, nor is it anywhere sanctioned by authority."

There has been no change of the law in this State applicable to what is quoted from those cases, and it would seem, therefore, to be clear that the Orphans' Court had no jurisdiction to determine how the real estate was disposed of and with what amount William Baker was to be charged for that which he had thus received. It does not meet the difficulty by simply alleging that the amount was fixed and that it was now personalty, because the property originally disposed of by the deceased was real estate "and how the deceased has disposed of that estate to his children the Orphans' Court has no concern," 8 Gill, 58, *supra.* It is evident that the testator intended his children to be charged with advances made to them for he estimated them in ascertaining the value of his estate, and, in disposing of the residue, he expressly said "including therein as above, any advances heretofore made to any of my children," and then

said that the one-eighth left to his son William " shall include the country place called 'Tremont' * * * * of which the estimated value is charged against him on my books." The general rule is that an advancement taking effect *in presenti* is to be reckoned at its value at the time it is made, while one to take effect *in futuro* is to be valued as of the time the donee comes into actual possession and enjoyment of it. 1 *Ency. of Law*, 2nd ed., 783; *Warfield* v. *Warfield*, 5 H. & J. 459; *Clark* v. *Willson*, 27 Md. 693. Its valuation, however, undoubtedly can be agreed upon between the donor and donee, but whether that has been done or not is a question of fact. There is nothing in the bill, or the will filed with it, that necessarily shows that such was done. It is true that the will says that the estimate placed on it by the testator appears on his books and from the bill we can at least infer that $14,000 was the amount so named on the books, but whether that is correct or not is to be determined by evidence, and in passing on the demurrer there is nothing from which the Court must necessarily conclude, so as to bind all parties interested, that such amount was correct or had been agreed upon between the donor and donee, or fixed by the former. But even if it be conceded that it was sufficiently stated to enable the Court to properly reach such conclusion, inasmuch as it was real estate that was originally advanced, and as the Orphans' Court cannot consider such an advancement in the distribution of an estate before it, the executor and the other devisees and legatees had the right to have the question passed on by a Court which had power to determine whether it was still to be treated as an advancement of real estate or whether the testator had converted his claim based on that advancement into personalty. From the clause in the will first quoted above, it might be contended that the testator did treat it as personal property, but in the fourth paragraph a contrary intention would seem to appear, as he there uses language that is susceptible of the interpretation that he intended to devise "the country place called 'Tremont'" which was to be included in William's eighth.

Although we have discussed the question above as if it was a *concessum* that the legal title to " Tremont" had vested in William in the lifetime of his father, and it was now simply a question whether it was an. advancement of real estate or personalty, in passing on the demurrer it might well be questioned whether there is anything from which it must be inferred, much less conclusively shown, that the legal title was not still in the testator when he died. The fourth paragraph, in terms, mentions real estate and when he *gives, devises* and *bequeaths* the one-eighth to William, he expressly says that it shall include " Tremont," and although he says the estimated value is charged against him on his books, that might be simply for the purpose of determining how much he should be charged with for that property in his devise and bequest of the one-eighth. It therefore does not certainly appear in the bill, or the will, that the title was already vested in William, but, if it was, this part of the will indicates very strongly that the testator regarded the advance as one of real estate, as otherwise he would either not have referred specifically to this property, as he did not to the $2,500 advanced to William, or to special sums advanced to other children, or he would have spoken of it as the money due from that property, or something to that effect. The intention of the testator is therefore at least sufficiently doubtful to justify the executor in calling upon the Court of Equity to construe the will and determine just what was meant, what disposition, if any, of the country place the testator had made in his lifetime, and if disposed of, then, whether it must still be treated as an advancement in real estate, or is now personalty. If it was the former, the Orphans' Court had no power to consider it in making distribution, and even if it is doubtful which he intended it to be, a Court of Equity is the proper *forum* to construe the will, and thereby not only protect the executor, but see that the intention of the testator is carried out. In either event the demurrer could not properly be sustained, as a Court of Equity has jurisdiction to construe

the will and determine whether the testator intended it as an advance of realty or personalty, and assuming jurisdiction for that purpose, it can, and should under the circumstances, retain the case and direct the distribution.

So far as we can gather from the record, the plea was set down for argument and no replication was filed. It states the date and place of record of the deed by which it is alleged that the testator and his wife conveyed to William the property for a cash consideration, expressed in the deed, of $14,000, alleges that that sum and the $2,500 constitute the total charge or advance to him and that there is no controversy or dispute whatever in reference thereto between any of the parties, either as to the character or amount of the same, etc. The decree does not in terms pass on the validity of the plea. If the Court was of the opinion that the plea should be allowed, then the plaintiff had the right to deny it by replication (*Rouskulp* v. *Kershner*, 49 Md. 516), and if it was sufficient there ought to have been some disposition of it. Of course, if in considering the demurrer, the Court was of opinion that the bill failed to allege such facts as to give it jurisdiction, it was unnecessary to refer to the plea, but the decree grants relief to the extent of holding that William Baker, Jr., was to be charged with an advancement in real estate, of the value of $14,000, and dismisses the bill as to all other relief therein prayed for. If the Court had jurisdiction to determine the character and amount of the advancement, it should have overruled the demurrer. If, as the decree determines, it was an advancement in real estate, then a Court of Equity is the proper place to distribute the estate, as it should be determined in the Court which could exercise its control over the whole subject-matter before it—and, as we have said, if that question was doubtful the Court should have held the bill for the distribution.

If it be correct that there was a deed which mentioned $14,000 as the consideration for the property, and the testator charged his son with that amount, in the absence of

other evidence on the subject to overcome those facts there can be no question about that being the proper sum with which he should be charged for this property.   Fourteen thousand dollars cannot be said to be a merely nominal consideration, and as that sum was not only mentioned in the deed, but charged on the testator's books, and interest paid thereon, it would be evidence of the strongest character, if not conclusive, that such was the amount agreed upon.   But what is set out in the plea does not defeat the jurisdiction of the Court to pass upon the question, although the facts alleged in it, if proven, may be sufficient to determine the amount with which William is to be charged. The plea should therefore have been overruled and the defendant required to answer, and in his answer he can set up the facts necessary for his defense as to the amount with which he is to be charged.

Being of the opinion that the Court below had jurisdiction to advise and direct the complainant in the further administration of the estate, and in the distribution thereof, and that the demurrer and plea should have been overruled, we must reverse the decree appealed from, but will direct the costs to be paid out of the estate.

> *Decree reversed, the costs to be paid out of the estate, and cause remanded.*

(Decided June 14th, 1900.)