# WILLIAN BAKER, JR., et al. *vs.* THE SAFE DEPOSIT AND TRUST COMPANY, Executor, et al.

*Settlement of a Testator's Estate in Equity—Partnership—Right of Partner Not Contributing Capital to Undivided Net Profits—Construction of a Will Directing Advances to the Testator's Children to be Deducted From Their Distributive Shares—Exceptions to Testimony—Jury Trial in Equity Causes.*

When a Court of equity has assumed jurisdiction of the distribution of the estate of a testator, and the legatees thereof have conflicting claims as to the amounts they are entitled to receive, it is proper for the Court to refer the proceedings to an auditor to take testimony and to state accounts setting forth the respective contentions of the parties.

The testator had carried on a business with his two sons, C. and W., and had contributed the whole capital and owned all of the assets of the firm. The two sons were entitled to certain shares of the net profits. when there were any. At the time of testator's death certain sums. stood upon the books of the firm to the credit of C. and W. as their shares of net profits, and an additional sum, representing undivided net profits, was to the credit of the profit and loss account. In order to, settle the partnership, the executor sold some of the assets to C. and W., who paid for the same in money, and agreed to give up to the ex- ecutor all money standing to their credit on the books of the firm and assign any interest they might be entitled to out of the assets of the firm after payment of its liabilities, with the understanding that the question as to their liability for the debts of the firm was not thereby concluded. During the latter period of the firm's business certain losses. had been incurred, and it was held on a former appeal that C. and W. were not personally bound to contribute to the payment thereof, but. that the same fell exclusively upon the estate of the testator. *Held,*

1st. That the object of this settlement was to avoid a receivership for the firm and to leave for future determination the question as to the liability of C. and W. to contribute to its losses, and to assign the money stand- ing to their credit only in the event of their being so liable.

2nd. That C. and W. are now entitled to be allowed from the testator's estate their shares of the net profits earned during his life and not paid to them.

Under the testator's will the sums of money advanced by him to his children were to be treated as parts of the estate in the distribution thereof. The testator had loaned or advanced different sums to his children, some of whom paid interest on what they received, and others had repaid the loans to them. Certain others did not pay to the testator either

the advances or interest thereon, and these he charged with the accru-
ing interest on his ledger kept by himself. The general scheme of the
will was to secure equality among all the children. *Held,*

1st. That in order to ascertain what amounts should be treated as ad-
vances, and what interest is chargeable thereon, it is competent to refer
to the entries made by the testator in his ledger.

2nd. That no interest is chargeable on such advances other than that
charged by the testator himself, since, although some of these were
originally loans, the subsequent purpose of the testator was to treat
them all as advances.

3rd. That the other children should not be charged with the excess of ad-
vances made to one of the sons over his distributive share.

4th. That the plea of limitations is not available by a legatee against the
advance made to him, since it is not a debt due the estate, but a gift
and the question is as to his rights under the will.

An exception to testimony in equity must clearly indicate the testimony
excepted to and the ground of the objection. Hence, an exception to
the testimony of a witness, in so far as it tends to vary the answer filed
by him is too general.

A Court of equity has full power to decide every question of law and fact
that may arise out of the subject-matter before it, and it is not bound to
send issues of fact to be tried by a jury.

Five appeals from a *pro forma* order of the Circuit Court
of Baltimore City. The will of the testator was as follows :

" I, Charles J. Baker, of Baltimore County, Maryland, do
make and publish this as and for my last will and testament,
intending hereby to finally dispose of all of my estate, both
real and personal, which I estimate as follows, viz. :

"Real estate and improvements thereon two hundred and
thirty thousand dollars, *personal estate (including debts due me
and also advances made to several of my children)* after deduct-
ing all my debts and liabilities, about five hundred thousand
dollars, thus making my whole estate about seven hundred
thousand dollars."

*First.* I order and direct that all my contracts and engage-
ments be fully complied with and all my just debts paid.

*Second.* (Contains specific legacies and devises to widow.)

*Third.* (Contains numerous pecuniary legacies.)

"*Fourth.* All the rest, residue and remainder of my estate,

real and personal (including therein as above said *any advances heretofore made to any of my children*), I give, devise and bequeath as follows, viz.:

"One equal eighth part to my son, William Baker, his heirs, personal representatives and assigns, which shall include the country place called "Tremont," adjoining "Athol," and containing, say about eighteen acres, of which the estimated value is charged against him on my books ; one other equal eighth part to my son, Charles E. Baker, his heirs, personal representatives and assigns ; one other equal eighth part to my son, George B. Baker, his heirs, personal representatives and assigns ; one other equal eighth part to my son, Bernard N. Baker, his heirs, personal representatives and assigns ; one other equal eighth part to my son, Richard J. Baker, his heirs, personal representatives and assigns ; one other equal eighth part to my son, Frank M. Baker, his heirs, personal representatives and assigns ; one other equal eighth part to my son, Ashby Lee Baker, his heirs, personal representatives and assigns ; and the other or remaining equal eighth part to the Safe Deposit and Trust Company of Baltimore, in trust for my daughter, Mary H. Bradenbaugh, etc., etc."

"And finally, I do hereby nominate and appoint the Safe Deposit and Trust Company of Baltimore, as executor of this my last will and testament, with full power to sell all or any part of my estate, real or personal, (so as the purchaser need not see to the application of the purchase-money) in its discretion for the purpose of carrying out this my will, and also with full power in its reasonable discretion of continuing the firm of Baker Brothers & Co., of which I am a member, for such a time, and providing for a settlement of its affairs and the liquidation of my interest therein in such a manner and on such terms as to my said executor may seem most fair and most advantageous, not only to my estate, but also to such of my sons as are co-partners with me therein."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John Prentiss Poe,* for Geo. B. Baker and the trustee of Mary E. Bradenbaugh.

*Frank Gosnell* (with whom was *Thos. M. Lanahan* on the brief), for Wm. Baker, Jr.

*George Whitelock* (with whom was *Charles Marshall* on the the brief), for Charles E. Baker.

*David Stewart* (with whom was *Edwin J. Farber* on the brief), for Richard J. Baker.

PAGE, J., delivered the opinion of the Court.

The five appeals in this record were taken respectively by five of the distributees of the estate of the late Charles J. Baker, from the *pro forma* order of the Court below overruling exceptions to the Auditor's Report A, and finally ratifying and confirming that account.

Mr. Baker died on the 22nd day of September, 1894, leaving a last will and testament, executed on the 23rd of April, 1894, whereby the appellee was appointed the executor and also trustee for the purposes therein mentioned. The parties to these appeals, have been twice before this Court; once in 90 Md. 745, and again in 91 Md. 297. The opinions of the Court and the records in these cases are now referred to for a fuller statement of the facts relating to the subject-matters with which we are now concerned, than will be set forth in this opinion. After the cause had been remanded to the lower Court by the decree of this Court, bearing date the 14th of June, 1900, the proceedings were referred to the auditor to state an account between the appellee and the decedent's estate ; and the distributees (or any of them) were authorized to introduce such testimony as, to any of them should seem desirable in sustaining their respective contentions. Three days after the passage of the order so referring the case, Richard J. Baker filed a petition to rescind the same. There was no error in the refusal of the Court to grant this petition. The

jurisdiction of the Court to direct the administration of the estate was unquestionably conferred by the allegations of the bill ; and it was a convenient method of determining upon the respective contentions of the parties as to their several interests in the estate that accounts should first be stated in which it would clearly appear what their respective claims were.   The auditor, having taken the testimony which appears in the record, stated two accounts, marked respectively "Account A" and "Account B," of which the former was confirmed by the Court, and the latter rejected.

Without setting out here the several exceptions in the form in which they appear in the record, the objections to the order of the Court made by the exceptants may be grouped as follows, viz.:

1st.  That William and Charles Baker are not allowed out of the estate of the testator the several amounts due them for their shares of the net profits, as they appear upon the books of the late firm of Baker Brothers & Co.

2nd.  That "advances" made by the testator in his lifetime ought not to be charged against the shares of the recipients ; and if this be erroneous and such advances must be so charged, yet they do not bear interest ; and

3rd.  That it was error in this proceeding to charge the shares of seven of the distributees, each with one-seventh of the sum of $6,104.38, being the amount of the advances to Charles E. Baker, in excess of his distributive share.   These objections will be considered in the order in which they are stated.

It is requisite to understand the nature of the claim of Wm. and Charles Baker to be allowed for a share of the net profits of the late firm, to state facts upon which it arises.   At the time of the death of Charles J. Baker, he was engaged in business, as a partner, with his two sons, Charles E. and William Baker.   The whole capital of the firm was supplied by him, and his sons owned no part of the assets, and were not liable to contribute to the payment of the losses.   Their entire interest in the business was a right to participate in the

net profits, whenever there were any, and when there were none, they received nothing for their services.    90 Md. 756. The record in the present case shows that at the time of Mr. Baker's death there were standing on the books of the firm as their respective shares of the net profits, to the credit of Charles E. Baker, $3,607.42, and to William Baker, $3,052.32. Also there was to the credit of the profit and loss account, representing undivided net profits, the further sum of $3,701.23, of which the respective shares of William and Charles would have been, if the partnership had continued, the sum of $1,110.23 each.    These distributions of net profits were made each year, and when it was definitely ascertained, "the individual account of each member was credited with their percentages of the net-profits, and the profit and loss account was debited with aggregate amount."    90 Md., (*supra.*)    Now when it is borne in mind that the sons were not liable for the debts of the firm, it is clear that the percentage of the net profits for each year, when ascertained, became and was a valid subsisting claim against the firm, which the sons could at any time draw upon, and which could not thereafter be diminished by subsequent losses of the firm.  So also, if for any year there were net profits, but their shares thereof had not been actually carried to their account, they would no less be entitled to have it regarded as a debt of the firm, to the extent of their respective percentages.    In such case their right to the amount would have become definitely and finally fixed, as much so as if the ascertained sum had been actually passed to their credit.

The question therefore comes to this, has anything occurred since the death of Mr. Baker, that has the effect of depriving them of the right of claiming their shares of the net profits? For sometime after Mr. Baker's death the appellee under authority conferred by the will continued the business.   On the 21st of January, 1896, William and Charles Baker purchased of the appellee a certain portion of the assets (particularly described in the agreement of sale), for the sum of $40,500, which has been fully paid.   The agreement of sale provides

among other things that William and Charles Baker shall "give up and assign to said executor all money standing to their credit on the books of said firm of Baker Bros. & Co., and also assign to it any interest, that they may have, or be entitled to, out of the assets of said firm after the payment of the liabilities of said firm." It is contended that the effect of this provision is to deprive William and Charles of all rights they may otherwise have had to claim any proportion of the net profits. To settle this question, we must examine into the purposes for which this agreement was entered into, the scheme it established, and interpret the provision, after an examination of the entire instrument. It is clear that its purpose was to effect thereby a settlement of the partnership affairs without the intervention of a "disastrous receivership." 90 Md. It left open for future determination what the rights of the partners were *inter sese*, with respect to liabilities for the payment of the obligations of the firm. The appellee contended that the sons were liable to contribute for that purpose; and for the purpose of securing a decree so declaring instituted the case reported in 90 Md. The scheme devised for effecting a liquidation of the firm's business was for the sons to take a portion of the assets and pay over therefor to the appellee $40,500, and all the rest and residue of the firm's property was to be handed over to the executor, whose duty it would then be to adjust all its affairs in such manner as was just and legal. The terms of the agreement and the "proposal" make this plain. It is stated in the preamble, that the appellee has power conferred by the will to make a settlement as it may deem advantageous; and that it and the surviving partners being desirous "of liquidating its affairs," had made an agreemect for doing the same, whereby the "surviving partners should convey to the executor all assets, including real and personal property, except such as the surviving partners had agreed to purchase," &c. It was an entirely proper thing that all the assets should pass into the hands of the executor, for the reason that the sons had never contended that all the assets of the firm were not the property of the dece-

dent.   The only contention between them was, whether the
sons could be called to contribute to the payment of the lia-
bilities of the firm.   The object of the parties therefore seems
to be clear, that what was to pass into the hands of the exec-
utor was to be either an asset of the firm or that which could
be made available for the payment of its liabilities.   It was
quite outside the scheme to transfer to the executor any other
property.   To this, the sons agreed without limitations.
They agreed to pay to the appellees the $40,500, to hand
over all the assets other than those purchased by them, and
(upon the hypothesis, they were liable for debts), to assign
"all money standing to their credit."   But at the same time,
they were careful to protect their claim to net profits, in case
it should be held they were not liable to contribute.   The
language of clause having this purpose in view, is as follows :
"It is also understood by said executors and by said William,
Jr., and Charles E. Baker, that the question as to whether or
not the said William, Jr., and Charles E. are personally liable
for the liabilities of said firm is not concluded hereby."   We
will not discuss the matter further than to point out that it is
difficult to assign a satisfactory reason for the insertion of this
clause into this agreement unless it be held that it was to pro-
tect the individual property of the sons from liability in case
it should thereafter be settled that they were not liable to
contribute to the firm's debts ; and if that was the purpose, it
would be unreasonable to hold that such protection would
not extend to all their individual property, whether it existed
in the form of real or personal estate, or was a credit for their
share of net profits on the books of the firm.   This Court
having decided that the sons were not liable for the firm's ob-
ligations, it follows that they are now entitled to be allowed
out of the estate of their father such amounts respectively as
may be due them on account of their share of the net profits
of the business.

   The next question is, should interest be charged upon the
"advances" made by the testator in his lifetime ?   It is clear
that these should be put on the footing of "advancements."

Technically they are not advancements, because there is no
intestacy. But the testator had power to require that they
should be so regarded: (*Manning* v. *Thruston*, 59 Md. 224;)
and that he did so intend, is fully shown not only by what he
did in his lifetime, but also by the terms of his will. With
respect to some of his children he expressly released them
from the payment of his "advances" to them, but directed that
they should be "considered an advance to him to be deducted
from what may be coming to him out of my estate." Such
an entry was made at the end of the account of Mary K.
Baker and of Frank M. Baker. By the will, the testator re-
fers to these "advances" in contradistinction to "debts" due
him. In estimating his estate, he refers to his "personal
estate, (including debts and *also* advances made to several of
my children), &c." These "advances" he does not regard as
being indebtednesses, but something other than that. And
again in the fourth paragraph, he directs all the rest of his
estate, real and personal (including therein as above said, any
*advances* heretofore made to any of my children), shall be
divided equally among his children, &c. In the same para-
graph the testator requires, that the share of William Baker
shall include the country place Tremont, "of which the esti-
mated value is *charged* on my books," &c. This Court in 91
Md. 310, held that this transaction, with reference to Tre-
mont, was to be treated as an advancement, but that the terms
of the will left it uncertain whether it was to be "treated as
advancement in real estate or is now personalty." We may
add also, that the desire of the testator to preserve equality
among his several children is apparent throughout his will ;
and, therefore, in making distribution such equality must be
preserved as far as possible. Possibly it may have been that the
advances were originally made to his children as loans, upon
which interest was charged and in some instances paid, from
time to time. But the testator could at any time change what
was originally a loan into a fund to be treated as an advance-
ment. To show what the amount was that he elected should
be regarded as advances, to be treated as advancements, re-

course can properly be had to entries made by himself in his own books. Indeed, inasmuch as it is the intention of the testator that must control it would be difficult to find a more certain method of ascertaining what the intention of the testator was, with regard to the amounts to be treated as advancements, than by reference to statements made by himself. For the purpose of fixing the amounts to be charged as advancements, we think it was competent to refer to entries made by the testator in his own books of account. As these advances are to be treated as advancements, no interest should be charged upon them.

It was contended also that Account A was erroneous, in that each of seven of the distributees was charged with one-seventh of $6,104.38, that sum being the excess of the advances to Charles E. Baker, over his distributive share of the estate. This contention should be sustained. If the advances are to be put on the footing of advancements, they cannot be regarded as debts to the estate. As was said in *Harley* v. *Harley*, 57 Md. 340, "an advancement does not involve the elements of a legal obligation, or future liability on the part of the person advanced, but it is a *pure* and irrevocable gift." But apart from this, there is nothing in the bill that warrants the Court in passing a personal decree for the payment of money against any of the appellants. There are no allegations in the bill that confer jurisdiction to enter any decree that is not properly incidental to the administration of the estate of the decedent.

There was also error in Account A in allowing the item of $2,227.61, so that one-eighth part thereof falls upon Charles E. Baker and William Baker each. By the decree in 90 Md. 759, these parties recovered their costs in that cause, and they should not be called upon now to pay any portion of them.

For these reasons the order of the Court below will be reversed and the cause remanded, that another account may be stated in accordance with the views herein expressed.

> *Order reversed in each of the five cases
> and causes remanded, costs to be paid
> out of the estate.*

(Decided April 17th, 1901.)

A motion for re-argument was subsequently made and in disposing of it,

PAGE, J., delivered the opinion of the Court.

A motion for reargument of this case has been filed by Richard J. Baker. Many of the reasons assigned, therefor, need not now receive further notice than the consideration given to them in the opinion of the Court. In the motion much stress is laid upon the fact that the Court erred in stating that the testator had released two of his children, Mary and Frank, from the repayment of his " advances " to them, whereas, in fact, Frank only had been so released. It was not, however, very material to the purposes the Court then had in view whether both or only one had been released. The statement was made only by way of argument to show the intention of the testator in the use of the word " advances " in his will. The fact that he had released any of his children from the repayment with the expressed statement that such advances would still remain as a charge on the share of his estate to which such child would be entitled was some evidence that the testator intended that the " advances " referred to in his will were the sums that he had advanced them in his lifetime. He had sustantially so expressed himself to at least another of his children. George B. Baker testified that " it was always understood that whatever amounts he (George) received, were to come out of any amount that might be due him after his death."

It is also affirmed in the motion that " other decisions of this Court are overruled without distinguishing or referring to them ; " and further along, the cases of *Chase* v. *Stockett*, 72 Md. 235 ; *Romer* v. *Jaecksch*, 39 Md. 585, and *Dilley* v. *Love*, 61 Md. 603, are specially mentioned. These cases, however, are plainly inapplicable to the facts of this case and for that reason were not particularly referred to. In the case of *Chase* v. *Stockett*, an effort was made, for the purpose of affecting certain of the dispositions of the testator, to offer a paper written two days after the making of the will, and the Court held that the paper, for that purpose, was utterly void. The case in

39 Md. deals only with entries in the course of business by a deceased partner, and decides that such entries are not admissible in a suit against a debtor of the firm.    In *Dilley* v. *Love*, there was no will.    The questions were : Were there advancements, and if so what was their amount ?    Declarations of the deceased were admitted to show what the intention of the decedent was when he made the advances, but not to show the amounts.    In the case at bar the question is as to the intention of the testator as expressed in the will—to what did he refer when he wrote in that paper the word " advances ? "    To show that, it was proper to offer in evidence facts which would establish the actual state of circumstances that existed when the will was made, so that we might put ourselves, as far as possible, in the place of the testator, and from that standpoint judge of his intentions.    This method of arriving at the proper interpretation of a will is not conjecture, nor is it a novelty. In *Hammond* v. *Hammond,* 55 Md. 580, this Court cited approvingly from *Hiscocks* v. *Hiscocks,* 5 M. & W. 363, to the effect that : "All the facts and circumstances respecting persons or property, to which the will relates, are undoubtedly legitimate, and often necessary evidence to enable us to understand the meaning and application of his words."    And again from the same opinion, " the only object and purpose for which such proof can be properly admitted is not to show what the testator meant, as distinguished from what his words express, but simply what is the meaning of his words."    It was by the application of these familiar principles, that need no citations in their support, that the meaning of the testator, as expressed in the words of his written will, might be ascertained.    He had power to limit his bounty as he pleased, and could at pleasure turn what had been debts into advancements, and charge them upon the respective shares of his children.    And it was for this purpose that it was competent to show that at the time of the making of the will, he had charged to his children, or some of them, the sums he had respectively charged them with ; also with such interest thereon as he deemed best.    Did he intend that this aggregate amount, in each case, should be the "advances" he referred to in his will ?

Having thus disposed of the task of explaining the opinion of the Court, to such an extent as any good end may require, we now come to matters more important and pertinent.

The Court in its opinion having laid down the general rules by which distribution should be made, remanded the case, so that an account might be stated in conformity therewith. It is now insisted by the solicitors of Mr. R. J. Baker that we specifically and definitely determine, with what if any, advances he must be charged. We will do so now.

Mr. R. J. Baker tendered himself as a witness and testified in his own behalf. No exception was made to his competency before he was examined, and it is now too late to raise that question. 1 *Greenleaf on Ev.*, sec. 421. There are, however, exceptions to portions of his testimony. But they are expressed in general terms, and do not indicate with clearness the testimony excepted to. The first exception is "to the testimony of Richard J. Baker, in so far as said testimony tends to alter, modify, take from or contradict the answers of the said Richard J. Baker, &c.;" and the second, is "to so much and such parts of his testimony," wherein he testifies to alleged conversations with the testator, in so far as the said testimony seeks to prevent the sums charged against him upon the books of the testator from being deducted from his distributive share of the estate, &c. These exceptions are very vague. What portions of Mr. Baker's testimony tend to modify his answers, or what parts of his conversations with the testator " seeks to prevent" the sums charged against him from being deducted from his share of the estate? These are not pointed out, but the Court is left to go through the testimony and ascertain from its own examination. In *Freeny* v. *Freeny*, 80 Md. 409, it was held that every exception to evidence should clearly indicate the testimony excepted to and the grounds on which it is based. We do not think the exceptions, now being considered, measure up the requirements of this salutary rule. The Court below seems not to have passed on these exceptions, but we think Mr. Baker's testimony must be received in this Court.

The plea of limitations, upon which Mr. R. J. Baker relies, can avail him nothing, because the question is not whether he is indebted to the testator, but the proper interpretation of his last will. Nor is he entitled to a jury to determine that question. A Court of equity, moreover, has full power and right to decide every question of law and fact that may arise out of the subject-matter before it, and it is not bound to send issues of fact to be tried by a jury. There is nothing in the record to show that the Court was asked to submit issues of fact of any kind to a jury, and even if it had been, the matter being entirely within its discretion, no appeal would lie from its refusal. *Chase* v. *Winans,* 59 Md. 475; *Barth* v. *Rosenfeld,* 36 Md. 613; *Hilleary* v. *Crow,* 1 H. & J. 542.

We will not repeat what has already been said in reference to what the testator meant by the words of his will; nor extend the argument further. The testimony makes it clear that the testator loaned or advanced various sums to his children, certain of whom paid interest on what they had respectively received, and certain others repaid back to him all that had come to them including interest. There were others who did not pay to the testator either the advances or the interest thereon; and these the testator charged with the accruing interest on his ledger kept by himself. An examination of this book will show the account of each one of his children, with such interest as he chose to charge them with; and such sum was the amount that he intended should be the extent of each abatement from their shares of the estate. It will also appear that he has so stated the interest as to preserve an absolute equality. For example Charles E. Baker is charged with $15,000, and interest paid up to 30th June, 1893. William is charged with $16,500, with interest paid up to 31st December, 1893; Frank's account is charged with interest up to 30th June, 1893; on that day there was due $15,900, and that sum is to be charged on his share. Mary paid up her interest to "about a year before the testator's death," which occurred on the 24th day of September, 1894. So it is found that the account of Richard J. Baker is charged with interest up to the

o

1st July, 1893, thus placing him on a substantial equality with his brothers and sisters. It is true that in July, 1888, the testator seems to have intended to relieve his son Richard of the payment of interest. He so entered it on the ledger and the son has so testified, but on the 29th December, 1892, he had changed his mind, as he had the right, and then placed him on the same footing as the others. We are of opinion, therefore, that his share of the estate must abate by the sum of $19,500.

We have examined with care the brief filed in support of the motion, but deem it unnecessary to comment upon anything therein contained further than has already been made.

The motion for reargument and also for modification of opinion must be overruled.

(Decided June 12th, 1901).