# EMILY J. HOFFMAN and ELIZA HOFFMAN, *against* JACOB SMITH.

The father and mother of the appellants executed a deed for lots in the city of Baltimore, to indemnify the appellee, and secure him against any loss that he might sustain by reason of his becoming security for the father of appellants. The deed executed in 1824, and in 1826, a partition of the lots had taken place, and some of the parties exchanged lots and executed conveyances accordingly. This bill was filed 20th November 1845. The husband and wife united in a note, in July 1838, which ascertained the sum then due to the appellants. This is *prima facie* evidence of a claim, and the appellants must show that it was intended thereby to destroy the trusts. In the absence of any such proof, the partition cannot affect the rights of the appellee under the deed of 1824.

Issues had been framed and sent to the county court, and a verdict. The verdict in a case not free from doubt, is entitled to great consideration and will be sustained, if not contrary to the instructions of the court.

The legal effect of the deed of 1826, was to give to each in severalty, the property in which each had previously undivided interests, and thereby the deed of 1824 was not affected, further than that it attached to the property allotted separately to Mrs. Hoffman, (mother of the appellants,) instead of any longer binding her undivided interest in the whole estate.

This not the case with a portion of the estate.

This is not a case in which the appellants can insist, that the appellee forfeited his title, by standing by and remaining silent, while innocent third parties are expending their money upon and improving the property. The title of the appellant was equally known to both parties, and the condition of the appellant was not affected.

The note of Mr. and Mrs. Hoffman, is evidence of a recognition at the time, of the amount of Hoffman's indebtedness to appellee.

THIS is an appeal by the defendants, from a decree of Baltimore county court, sitting as a court of equity, and which directs a sale of the property, (lots No. 2 and 4,) therein mentioned.   Upon these lots the complainant claimed to have a lien to the amount of his demand against the husband of the owner of the land,

The bill was filed 28th November 1845, by the appellee, and sets forth the death of one Jacob Smith, in 1818, leaving a widow and three children, the complainant, a daughter Margaret, who married Charles Klassen, and Mary, who married George W. Hoffman.   The father, it is stated, devised to each of his children, a lot of ground in the city of Baltimore, and to them as tenants, in common the rest of his estate, real and personal, in a part of which he gave his widow a life estate,

George W. Hoffman, the husband of one of the children, (Mary,) the bill charges, was a sugar-refiner, in Baltimore, and constantly was in need of loans and endorsement of notes, and applied to complainant to aid him in these ways.   Complainant agreed to his request, provided he was indemnified, and that the property of the wife was put out of the reach of her husband and his creditors, by a conveyance in trust for her separate use during life, remainder to her children.

This was agreed to, and in execution of the agreement, a deed was, on the 27th May 1824, executed by Hoffman and wife to the complainant, whereby they conveyed to complainant the lot which her father devised to her in severalty, and also her undivided interest as aforesaid, in trust, to authorize the complainant to sell when necessary, any part of the property to indemnify himself; and the residue for the separate use of the wife, (Mary Hoffman,) for her life, with remainder over to her children living at her death.

It is charged that the residue of the estate, remained un-

divided, during the life of the widow of testator, and after her death in January 1826, commissioners were named by the appellee and his sisters, and by them a conventional partition was made, and deeds were executed to pass the title in severalty. The bill then sets forth as part of the terms of said partition, that the two daughters, Mrs. Hoffman and Mrs. Klassen, should exchange with each other, the lots devised to them in severalty. Mrs. K. receiving $650, for equality of partition. The deed from Hoffman and wife, was to the complainant who paid Mrs. Klassen the $650.

In November 1837, an account was stated between complainant and Hoffman, and the latter was then indebted to the former $2,880. The complainant then declined further aid, and Hoffman failed.

The complainant was unwilling to sell the trust property, but wanted some evidence of, and security for his claim, by specific lien on a part of the property. Hoffman and wife executed to complainant their joint note in July 1836, payble without interest, five years after date. During the life of his sister, the complainant was unwilling to lessen the value of her life income in the property, by a sale of any part of it. Hoffman died in 1836, and his wife in September 1845, leaving three children, (the defendants,) the last named, under twenty-one years of age. The complainant wishes now to close the trust by a sale of what will be sufficient to pay his claim, and a transfer of the residue to the defendants.

Prayer for a sale of the fifty-five feet on Pennsylvania Avenue, which includes the land conveyed by Mrs. Klassen to Mrs. Hoffman, in exchange for the lot devised to Mrs. Klassen, and for further general relief.

Mary Ann Hoffman, one of the daughters of Mrs. Hoffman, died, and her interest descended to her two sisters. Another of the defendants, (Emily Jane Hoffman,) answered, therein admitting the devises as stated, the execution, both previous and subsequent to the deed of 1824, of notes endorsed by the complainant for her father's use, but alleges that every note made "by reason of the condition that such

deed should be executed," has been paid, and the lien on the property, thereby discharged. Admits the partition, and pleads the statute of limitations.

The other defendant being an infant, answers by guardian, she never heard of the deed of trust until after the death of her mother; insists that the claim of the complainant is not secured by that deed, and relies on limitations.

Before the court below acted upon the case, the following issues were sent to be tried by a jury on the law side of Baltimore county court:

1st. Whether the complainant became liable for the payment of the notes mentioned in exhibit DS., (being all the notes which he claimed to have paid,) because of the supposed security given by the deed of trust of May 1824.

2nd. Or whether he became so responsible and liable because of his confidence in the integrity and solvency of Hoffman, without reference to the deed?

The verdict of the jury was, that the complainant became responsible because of the security given by the deed, and not because of his confidence in the integrity and solvency of Hoffman, without reference to the deed.

A decree was passed, 11th July 1846, to the effect, that unless the defendants, before the 20th July 1848, paid to the complainant $2,880, with interest from 2nd July 1843, and costs, lot No. 4, mentioned in the proceedings, should be sold, and if insufficient to pay the debt, that lot No. 3 should be sold. That on payment of the debt, the property or balance of proceeds of sale left, should vest absolutely in the defendants, free from the trust created by the deed of May 1824. The court ( C. J. Archer, J. Purviance and J. Le Grand,) in their opinion filed, state, that they see no reason to object to the finding of the jury upon the issues. That the parties could make a conventional partition, binding on those in remainder. 1 Story's Comm., vol. 1, p. 730, 4th ed. And that the partition made in 1826, is to be taken in subordination to the deed of May 1824. That upon any other conclu-

sion, the complainants' security would be gone ; and a just claim thereby defeated.

From this decree, the present appeal is taken.

The case was argued before ECCLESTON, TUCK and MASON, J.

By *Mayer and Stewart* for the appellants, and *Frick and Alexander* for the appellee.

*Mayer* for appellants.

Hoffman prevailed upon his wife to unite in a deed of trust, making her property answerable to the amount of the appellants liabilities for him. The deed included the lot devised to her by her father, and also her undivided interest.

Appellant united with Mrs. Klassen, in conveying to Mrs. Hoffman all her interest in the lot.

In 1829, appellant paid over to Hoffman and wife $3,000, and Hoffman improved the property at a cost of $4,000, by the means which Mrs. H. furnished.

We contend that appellant deprived himself of the control which the deed of 1824 gave him, over the trust property. It was not a right extinguishable only by a deed of release. It might be destroyed by matter in *pais*, and his subsequent acts took from him all right to resort to the trust property, to discharge his liabilities for Hoffman, the husband. A mortgage is nothing; but a security and a receipt by him, will divest the mortgagee of that security.

The appellant, after the subsequent conveyances, relied on Hoffman's integrity and solvency, of which the record furnishes proof.

It was inequitable in the appellant to invest, or suffer to be invested, in the improvement of this property, means belonging to Mrs. H., if the property, when improved, is answerable to him for debts due to him from her husband.

The appellants rely on the subsequent deeds. He referred to 2 *Harri.* (*Dela.,*) 517, 1 *N. J. Reports*, 595.

As to specific performance of agreement, 2 *Story, sec.* 679.

He referred also, upon this subject, to 7 *John. C. R.*, 184. 28 *Eng. C. L. Reports*, 90, 96. 12 *Wend.*, 57. 5 *John Ch. Rep.*, 104, 268. 33 *Com. Law Reports*, 115. 29 *C. L. Rep.*, 54.

The mere lapse of time has extinguished this claim. Less than twenty years may be a fatal objection to such a claim. *Vigilantibus non dormientibus leges subserviunt.* 2 *Story's Equity*, sec. 1520. 7 *How.*, 258. 1 *Story C. C. Reports*, 204. 8 *How.*, 210. 9 *Peters*, 405, 197. 2 *Baldwin's C. C. Reports*, 418. 1 *McLean*, 166. 2 *How.*, 391.

How does Smith attempt to account for this lapse of time? He did not desire to enforce this claim during the life of his sister. *See* 7 *Peter's Rep.*, 258.

Lapse of time need not be pleaded. *Story's Pleading*, 484, 503. 5 *J. C. R.*, 545. 6 *John. C. R.*, 122, 360. 8 *Peters*, 210. 1 *Bald. C. C. R.*, 418. 1 *Story C. C. R.*, 204.

In a case like this especially, the trust fund could be answerable only for appellants liabilities, within a reasonable time. 10 *Eng. C. L. R.*, 183.

If injury has resulted from default in giving notice, the party who ought to have given the notice must be the sufferer. 11 *Medcalf*, 361, 563, sec. 7. *Ben. Munroe's R.*, 5, when notice to be given.

The court below had no right to send the issues to a court of law, and it may be reversed. 1 *John. Cases*, 498, 506. *Gros Evid.*, 527, 528. 6 *Cranch*, 8. 3 *Story's C. C. Rep.*, 742.

Ordinarily a party is to have recourse to principal, without resorting to security. Can that security which is given by a wife, be resorted to before it is ascertained that the husband is insolvent?

*Frick* for the appellee.

The finding of the jury is conclusive upon the court below and is conclusive here. The issues are sent to a jury to determine the question before the court, and this was a question

of fact. The court below stated, that they see no reason to object to the finding of the jury upon the issues, that the parties could make a conventional partition (1st *Story's Com.* p. 730, 4 *ed.*,) and that the partition made in 1826 is to be taken in subordination to the deed of May 1826.

Testimony not in the record, may have been before the jury.

Was the lien which the complainant had on the land waived? There is no difference between a guarantee by a *feme covert* and any other person. 6 *G. & J.*, 436.

Are there any circumstances, from which it can be inferred, that Smith intended to waive his lien? Appellees insist, that they take under the deed of 1824, and not as heirs. The deed of 1824 was not known to the man who prepared the deed of 1826.

Is there any thing in the supposed solvency of Hoffman, from which to infer that Smith had waived his lien?

Smith, by endorsing his notes, enabled Hoffman to obtain credit, and the credit thus obtained, is the proof that Hoffman was in good circumstances and credit.

As to the legal operation of the deeds: Are they to operate by way of estoppel, contrary to the intent of the parties. Is complainant estopped by the deeds? 6 *H. & J.*, *p.* 4. 7 *G. & J.*, 369.

The children of Mrs. Hoffman might have avoided the partition and exchange, but they held under it. 2 *Verm.*, 233. Equity has no more jurisdiction than courts of law, in matters of partition. 1 *Story's sec.* 656. 9 *Eng. Chan. Rep.*, 448. The tenant for life represents the inheritance, for the purpose of making partition. 2 *Vez. J.*, 98.

As to staleness of the claim: In the case of mortgage and vendor's lien, twenty years will bar, but in the case of legacies or trust, no time is a bar: though in such cases, reliance may be had on the staleness of the demand.

Here limitations can run only from the date of the cause of action, in 1837; not to run from the date of the deed. 12 *G. & J.*, 47. 1 *H. & J.*, 109. 6 *H. & J.*, 296.

There must be a lapse of twenty years, in case of this in-demnity. 11 *G. & J.*, 243. 2 *Bland*, 282. See also 9 *Mass.*, 242. 16 *Pick.*, 22. 2 *N. H.*, 522.

We maintain:

1. That the notes referred to in the paper, marked D. S., No. 3, are such as the deed of trust, of May 1824, by force of its provisions, and the agreement of the parties thereto, was intended to secure, and that the deed does in fact, secure those notes; so that upon their being paid by the appellee, he acquired an equitable lien for the amount thereof, upon all the property conveyed to him in trust by the said deed.

2. That the balance due to him, on account of his payment of said notes, is $2,880; and that the note of Hoffman and wife for that sum, was given as an acknowledgment, and evidence of the amount due to him, under the security of the said deed.

3. That the deeds of 1826, operated merely to effect a partition of the real estate of Jacob Smith, the elder; and vested in the *cestui que trusts*, under the deed of 1824, a several estate in lots, No. 3 and No. 4, subject to all the incumbrances and provisions of said deed, of 1824.

4. That the said partition must be regarded as now binding upon the appellants; and that the property held by them, in virtue thereof, is responsible for the claim aforesaid of the appellee.

*Alexander.* Deed of trust of 27th May 1824, conveys lot, No. 2, specifically, and the undivided interest of Mrs. Hoffman in the residue of her father's estate, in trust: 1st. to indemnify Smith, then for Hoffman for life, and after her death, for children then living.

Balance of account due from Hoffman, $2880, for which Smith and wife gave their note of 2nd July 1838.

Decree directs a sale of lot, No. 4, and if the proceeds of sale are insufficient, then lot, No. 3, is to be sold.

The answer of the adult defendant admits the note of 2nd July 1838 to be valid; but denies that this note, or any of the liabilities of Hoffman to Smith, were contracted on the secu-

ty of the deed of trust. She pleads limitations, and also relies on the legal effect of partition.

The indebtedness, it may be assumed, is established, and my first business will be to show, that this indebtedness was contracted on the security of the deed of trust.

It is said that Hoffman's credit was good. So it was, in the opinion of some,—but doubtful, others thought; good, because of the facilities afforded him by Smith.

Mrs. Hoffman could have joined in the note, only to show that the intent was to bind her separate estate.

Reliance is placed on the deposition of Kauffman, and yet he only proves, that Smith expected to be secured out of the *sugar-house.*

Hoffman said the property belonged to his wife *and children;* and how could that be, if the deed of trust was abandoned?

As to the issues, and the right of the court to reverse them, 1 *John Ca.,* 498, only shows, that before trial a party may appeal from an order, which directs an issue, and it may be reversed if the testimony is clear.

3 *Story,* 726, only states in general terms the power of the court over a verdict.

He cited 2nd *Daniel Chan. Prac.,* 1307, 1315. 8 *Con. Eng. Ch. Reps.,* 278. 12 *Price,* 650. 2 *Ball and Beatty,* 455. 2 *Story, secs.* 468, 469, 470. 18 *Cond. Eng. Ch. Reps.,* 449.

As to the plea of limitations : There is no statute applicable to this case. The deed of 1824, creates a trust, or charge, which can be enforced only in equity. 11 *G. & J.,* 245.

The delay may be accounted for. The deed contemplated continuing credit to Hoffman, and there was no default until 1837.

As to the effect of the partition : it could not have changed our rights ; the deed shows the intent to have been, that it should operate merely as a designation of her property, and not to destroy trusts for infant children.

Lot, No. 3, was exchanged for lot, No. 2. But lot, No. 2, is still bound by the trusts of the deed of 1824. Smith has a

tight to look to No. 3 for an indemnity. He may show a mistake.

*Stewart* in reply:

This bill was filed twenty-one years after the execution of the deed, (in 1824,) which is the basis of the complainant's claim. According to the decree, the deed is yet in full force, and paramount to the partition.

As the complainant relies on the deed of 1824, he must show, that the note of Hoffman and wife is a lien on the trust fund. If the trust property has been liberated from the lien, it is a fatal objection to this claim.

The *corpus* of the trust property is gone, and gone by the agency of the complainant himself. Where is now the specific property given by the will to Mrs. Hoffman? Where is the undivided estate? The complainant himself, in his bill of complaint, shows, that it no longer exists for the purposes of the trust deed, to give to the complainant any lien upon it.

There existed no claim when the partition deeds were executed in 1826, and that deed gives her an undivided estate without any lien. Has the complainant a right to ask this court to subvert any of these arrangements? There is no averment of mistake or ignorance. Yet the owner of the trust property wishes to substitute other property never conveyed in trust, or in any way substituted for the trust deed.

The note of Hoffman and wife, it seems, is to be made use of, to give to this transaction a character which was not given to it, either in the note or in the deed of 1826. Never before or at the time of the deed of 1826, was the property exchanged or divided, to be substituted for the property which the deed of 1824 conveyed. 9 *Peters*, 609.

When the deed of 1826 was executed, conveying the property to Mrs. H. *absolutely*, there was no note of Hoffman's *outstanding*. How could property so conveyed, be affected by the trust deed of 1824? The deed of 1826 has no reference whatever to the deed of 1824; how then can the pro-

perty conveyed by the former, be held in subordination to the deed of 1824?

The deed of 1824 was designed to enable Hoffman to ob·tain credit when embarking in business, and until he could stand alone. There is no proof that Hoffman received any aid from Smith from 1824 to 1829. In 1829, Hoffman was in high credit, according to the testimony of those with whom he dealt. The amount of his credits in 1829, $19,000.

Were the notes of 1836, '7, given upon the faith of the deed of trust? That deed was never withdrawn from the clerk's office until 1838, long after the execution of the note which is the basis of this decree. Could that note have any connection with the deed of trust?

A trustee, *with the trust fund*, improves the property which he now claims; when he thus employed the trust fund, he must be considered as having abandoned any lien, which otherwise he might have had.

With respect to the issues, they are most improperly framed. The jury are required to say, what induced Smith to make himself liable for the amount of the notes?

Surely such a finding cannot be used in this court, in order to satisfy its conscience, if, upon an examination of the documentary and other proof, it is found to be quite unnecessary to enlighten its conscience in such a mode.

With regard to reforming the deed of 1826, there is neither allegation nor particle of evidence of ignorance or mistake. The act of 1832, ch. 302, sec. 5, cannot be made to apply to a case, which would require the court to assume allegations and proof, and to change the prayer for relief, and all this when there is in the record nothing from which to infer, that a better case can be made out for the complainant. The application must go upon the ground of a contract in 1826, which made lot No. 4 a substitute for the *corpus*.

MASON, J., delivered the opinion of the court.

We can find nothing in the record before us, to warrant the assault that has been made by the appellants' counsel in

argument, upon the conduct and motives of the appellee in this cause. As far as the history of the transactions between these parties can be gathered from the evidence in the record, the court can see nothing in the conduct of the appellee to deserve the severe animadversions which have been indulged in towards him ; but, on the contrary, we feel constrained to express the opinion, that according to the rules of morality and fair dealing, his claim, which he is now seeking to enforce, ought to be paid, and if defeated at all, it must be by means of the application of some strict, technical rules of law.

In the first place, we regard this claim as well founded upon principles of morality and abstract justice, because, by the express agreement of the parties, the property which was derived by Mrs. Hoffman from her father, Jacob Smith the elder, was pledged as security or indemnity to the appellee, and constituted the consideration for the advances and endorsements to be made by him for Hoffman Secondly. Hoffman and his family enjoyed, for a long series of years, the advantages of the appellee's money, and credit, and by means thereof, was enabled successfully to prosecute his business and sustain himself amid the vicissitudes and reverses of commercial life. And thirdly, the debt which forms the basis of the present suit, was subsequently distinctly admitted, and its payment promised by both Hoffman and his wife, by the note which they executed in 1838, and which is brought to our view in the record. In the absence of frauds or circumventions, it would be difficult to imagine a demand which could stand on firmer equitable grounds, than is to be found in the three enumerated circumstances which support the present claim. If there be any foundation to sustain the proposition of the appellants' counsel, that this claim is not to be supported upon principles of morality and honor, it must result from the close ties of relationship which exist between the parties, and not from the want of a just and legal consideration to support the debt itself. All such questions address themselves to the conscience and sense of propriety of the creditor, rather than to the restraining powers of a court of equity, and in all instances

ought to depend upon the peculiar circumstances of each case.

The defences set up by the appellants against the enforcement of this claim are mixed questions of law and fact. The complainant has exhibited a *prima facie* case, and the question of fact submitted to us is, has there been any agreement or transactions between the parties, by which the rights of the complainant acquired by the deed of 1824, have been surrendered or defeated? There is clearly no *express agreement* by which those rights have been in any way compromitted, nor have we been able to find any evidence in the record, of the existence of any facts, from which a rational mind could infer any purpose on the part of the appellee, to abandon his rights and security under that deed.

But it has been contended by the appellants, that the *legal effect* of the deeds which were executed in 1826, two years after the execution of the deed of trust, was to abrogate and annul said deed, or that they furnished the evidence of the intention of the appellee, to abandon his rights under the deed. There is nothing in the deeds of 1826, which by express terms vacates the deed of trust, or suspends its powers, and if such a result is produced, it must be by means of the legal construction to be given to those instruments by which the inference is to be drawn, that such was the design of the parties.

Let us, as far as we are able, gather the intentions of the parties from the deeds themselves, as well as from the surrounding circumstances attending their execution.

The deed of 1824 is intended, as expressed upon its face, to embrace the whole estate which Mrs. Hoffman derived from the father, and to secure her brother against loss as endorser for her husband. In the interval between 1824 and 1826, nothing occurred in the affairs and circumstances of Mr. Hoffman, which would render the necessity of the deed of trust less important and pressing as a security to the appellee as endorser and creditor of Hoffman, and therefore we must suppose that the motives which induced the execution of the

deed in 1824, still existed for its continuance in 1826. At the last named period, after the death of the mother, for the mutual benefit and convenience of all the parties, and with a view of a settlement of the estate, the arrangement took place in regard to the property left by their parents. These were the sole motives, as far as we can learn from the record, which induced the parties to execute the deeds of February and June 1826. It matters little in the view we are now taking of the case, whether this conventional arrangement is to be styled a partition or not. It was designed for the mutual benefit of the several heirs of the estate, and neither added to, nor diminished, their respective interests under the wills of their father and mother. Upon what principle of justice then, can these transactions be supposed to furnish evidence of an intention to defeat or vary, in any way, (except in the mode hereafter shown,) the previous deed of 1824? Did the appellee gain any advantage or profit by them, as a consideration for the loss he is supposed to have sustained? Were these arrangements entered into at his instance, and for his peculiar and exclusive benefit? Clearly not. Yet we are required to give to these deeds a construction which would defeat certain vested rights of the appellee, under the previous deed, without showing that the terms of the deeds would warrant such a construction, or that there was any consideration moving him to an act, which would be so greatly prejudicial to his interests.

The doctrine of estoppel does not apply in this case. The appellee does not seek to deny any thing, either express or implied, in the deeds of 1826. There is nothing in them which creates any equitable ground to suppose, that their purposes and designs were to revoke a deed of trust of 1824. On the contrary, we regard the deed of February 1826, as subordinate to the deed of trust. It has been contended, that the appellee should have excluded, in express terms, by the deeds of 1826, any inference that those deeds were to subvert and vacate the deed of 1824. It might be asked, with much greater force, why did not Hoffman and wife disclaim the further con-

tinuance of the trusts executed by the deed of 1824, if they designed to accomplish such a purpose? The principles of equity would rather require the announcement of such a purpose to come from Hoffman, than from the appellee, so as to put the latter upon his guard, as to any future advances and credit, which he might have extended under the impression, that he was amply secured in the liabilities he was incurring. We do not therefore regard the partition of February 1826, whether considered with reference to its legal operation, or as furnishing evidence of the intention of the parties, as affecting in any degree the rights of the complainant under the deed of trust of 1824.

Whatever doubt might exist in the mind of this court, as to the sufficiency of proof to support the claim of the complainant, we think the verdict of the jury ought to have weight enough to remove those doubts. Although a verdict under such circumstances is not conclusive upon the court, yet in all doubtful cases it is entitled to great consideration, and should be sustained, unless against the absolute convictions of the court to the contrary.

So much then as to the deeds of 1826, considered as exponents of the purposes and intentions of the parties to them, with reference to the deed of 1824. The next consideration to which our attention is called, is the *legal effect* of the deeds of 1826. The deeds executed in February, were clearly made in pursuance of a *partition* entered into between the several heirs of Jacob Smith the elder. The effect of a partition is merely to give to persons titles in *severalty*, to property in which they had previously held undivided interests; and the deed of 1824, was not affected by this partition, further than that it was made to attach to the property allotted separately to Mrs. Hoffman, as her share of the estate of her father, instead of her undivided interest in said estate. The rights of the appellee to lot No. 4, which Mrs. Hoffman took under the partition, we think, are unimpaired, and that the same ought to be sold to satisfy his demand.

But as regards the deeds of June 1826, we think a differ-

62     v. 1

ent question arises. It is true the complainant denominates the exchange, or sale of property which took place by virtue of those deeds, *a partition,* and that the adult defendant admits the transaction to be what it was styled "a partition," yet this court nevertheless cannot so treat the deeds of June. Upon the face of the deeds themselves, and from the nature of the transaction, it is clear it was not, and could not have been a case for a partition, but it was simply *an exchange, or rather a sale* of property. By this arrangement in June 1826, Mrs. Hoffman acquired title to a piece of property, being lot No. 3, as designated on the plot, in which she had previously no interest whatever. It is true at the same time, she parted with lot No. 2, which was clearly embraced within the deed of trust, but there was no agreement or understanding, that the newly acquired lot was to be charged with the incumbrances of the one which she had parted with. There is nothing in the deeds themselves indicating such a purpose, nor is there any agreement proved which shows that such was the intention of the parties. The effect of these conveyances was to extinguish the appellee's claim, under the deed of trust, to lot No. 2, and to that extent to diminish his security, but that they could not by possibility operate as a transfer of the trusts originally charged upon that lot, to the newly acquired property. We are therefore of the opinion that Mrs. Hoffman took lot No. 3, free and unincumbered by the deed of trust, and that the prayer of the bill so far as it seeks to charge this lot with the claim of the appellee, ought not to be granted.

Another defence relied upon to defeat the claim of the complainant, is, that his silence and general conduct as disclosed by the testimony, was such as to lull Hoffman and wife into a false security, and to induce them to suppose that the impending evil which they had brought upon themselves, had been removed, or rendered harmless. There is no positive proof of any such conduct on the part of the appellee, nor is there any evidence in the record from which an inference could be reasonably drawn of any such conduct on his part. The principle relied upon by counsel in their argument

upon this point seems to us to have no application to this case. We concede the principle, that where one stands by and sees innocent third parties laying out money, and making improvements upon property, to which he himself has some claim or title which is unknown to the other parties, and he does not give notice of it, he cannot afterwards, in equity and good conscience, enforce such claim or title. But this doctrine does not apply to a case like the present, where the claim or title of the complainant was equally open and apparent to both parties. The Hoffmans could not set up ignorance of the complainants' rights, because they were parties to the deed that created those rights. And again, how were Hoffman and wife prejudiced or injured by the alleged silence or conduct of the appellee, which is said to have indicated an intention to abandon his rights under the deed of trust? Are their condition worse than it would have been if appellee had in their presence, repeatedly and openly asserted the existence of his deed? Would their interests been affected, or the appellee's rights impaired, even if the latter had, through ignorance; supposed that his deed had become nugatory?

We are clear in the opinion that they would not. This alleged conduct of the appellee, even if it had existed, has not affected or varied the condition of the Hoffmans, nor created any *new* rights or exemptions in them, which would be violated by enforcing the deed of trust.

The same remark is true as regards the improvements which were placed upon the incumbered premises. At that time the appellee had but a remote and contingent claim upon the property, which it was in Hoffman's power at any time to have defeated, by paying the debts for which Smith was liable; and therefore, the improvements ought rather to be regarded as designed for the benefit of the former than the latter. But let this be as it may, the improvements were made with the knowledge and approbation of Hoffman and his wife, and with a full knowledge of the existence and effect of the deed of trust, and they therefore cannot be said to have been innocently drawn into this expenditure of money.

Nor do limitations apply to this case, in our judgment. We do not deem it important to express any opinion as to the legal effect of the note executed by Hoffman and wife in 1838, to revive the debt, had it been barred by limitations; because we regard the original demand or cause of action which the deed of trust designed to embrace, as being in full force, and unimpaired by lapse of time, at the moment of filing the present bill. It is only important to refer to that note as furnishing evidence, that, at least in the opinion of Mr. and Mrs. Hoffman, the claim of the complainant had not by any previous act of his, been defeated or released. The evidence is clear to our minds that the note was given in reference to the responsibilities incurred by Smith under the deed of trust, and it was therefore a manifest recognition and admission of the justice of his debt, so far as they were concerned, even though the note should have no other effect.

Many other questions were raised by the several counsel in the argument of this cause, which we do not feel ourselves called upon to settle. The views already expressed, in our opinion, dispose of the whole case. We think, in accordance with those views, that the decree of the county court ought to be affirmed, so far as the same directs the sale of lot No. 4, and that it must be reversed as regards lot No. 3.

*Decree affirmed in part, and reversed in part.*