SAMUEL BORSSUCK *v.* THEODORE T. PANTALEO ET UX.

[No. 16, January Term, 1944.]

*Decided March 23, 1944.*

150

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, and BAILEY, JJ.

*Williams J. McWilliams*, with whom were *William Townshend* and *Albert J. Goodman* on the brief, for the appellant.

*George B. Woelfel* for the appellees.

MARBURY, J., delivered the opinion of the Court.

The appellees filed their bill of complaint in the Circuit Court for Anne Arundel County for an injunction restraining the appellant from proceeding with the erection of a dwelling house, and for further relief. The appellant answered and testimony was taken. It showed that the appellees, as tenants by the entireties, had purchased a house and lot in a subdivision in the City of Annapolis from the Life Long Homes, Inc., on December 2, 1940, and that subsequently the appellant on April 23, 1941, had purchased a lot in the same subdivision adjoining that of the appellees, and had started to construct a large dwelling house thereon. All of the lots in this subdivision were subject to certain restrictions. One was that no building should be located on any residential building lot nearer than thirty feet to the front lot line, or nearer than five feet to any side street line. The appellant's deed did not list the restrictions which were numerous, but did contain the statement that the property was to be held "subject, however, to the restrictions in chain of title." The restrictions were known to the attorney who examined the title, and prepared the appellant's deed, but he did not communicate them to the appellant. The latter arranged with an architect to prepare plans for

a dwelling to be erected on the property. The architect did not look up the restrictions, but assumed that the building line was twenty-five from the lot line rather than thirty, because that was the general rule in the City of Annapolis. Bids were asked and a contract made with a builder who was also ignorant of the restrictions and was given no information about them. As a result the house was planned with its wall a little over four feet beyond the front building line, and if the steps are counted, a little over seven feet beyond the front building line. The outline of the building, according to the architect, was staked out on the lot on December 7, 1942, and the foundation was completed about the 21st or 22nd of December. Nothing was done thereafter until after New Year's, and then the studding was put in and it became apparent then, if it was not apparent before, that the entire building was going to extend beyond the building line. There is some disagreement in the testimony as to when the appellees first complained. The appellees testified that they thought that a porch was going to be built on that side of the house, and they did not mind that because it did not cut off their view, but when they saw the studding, it became apparent that the wall of the house was going to extend four feet beyond the building line, and then they began to object. They first saw the contractor and then the architect, and finally called the appellant. None of these objections produced any result except conversations, and the building went on so that finally the appellees filed their bill of complaint. No preliminary injunction was issued, and the appellant did not stop his building. The house was practically completed, at least so far as the outside was concerned, when the case was first heard below. The chancellor held that it would be inequitable to direct the removal of the building on which $10,000 or more had been spent, and, therefore, did not grant the specific relief prayed for. He felt, however, that the appellees might be entitled to damages, and accordingly passed an order directing that cer-

tain issues be framed and submitted to the law side of the Circuit Court for Anne Arundel County for trial by jury. These issues were first, did the complainants sustain actual damage as the result of the appellant erecting his house contrary to the covenants referred to in his deed, and second, if the jury's answer to the first issue be yes, what is the amount of such damage? The issues were then removed to the Circuit Court for Prince George's County, and on trial there before a jury, the answer to the first issue was yes, and the answer to the second issue was $1,500. When the result of this trial was certified to the chancellor, he passed a final decree denying a writ of injunction, but giving the appellees a money decree for $1,500 damages. From that decree the appeal comes here.

The appellant raises three questions. First, the correctness of the chancellor in refusing to dismiss the bill entirely at the close of the evidence taken before him. Second, was the chancellor's action in submitting the issue of damages to the law court an abuse or unwarranted exercise of discretion. Third, was the chancellor correct in adopting the verdict of the jury and again refusing to dismiss the bill of complaint. They will be considered in order.

The basis of the appellant's first contention seems founded on the general statement that the law does not favor restrictive covenants which is, of course, true. There is, however, no question here of the validity of these restrictions or of their violation. The fact that they were violated unintentionally does not prevent damage and injury being done to the appellees. The chancellor had before him a claim made by one of the appellees that she thought her property was damaged $5,000. The appellees did not introduce more specific evidence of damage because they undoubtedly wanted the house removed. They were in the position of people who had bought a house in a restricted subdivision where there was plenty of light, air and view, and where all the other houses conformed to the restrictions. A much larger house,

which to their minds was out of keeping with the other houses, was built adjoining them, cut off their view, and apparently dwarfed their house. They wanted what they had bought and what they were entitled to, and they were not concerned, in the first instance, with the financial loss occasioned them. Mrs. Pantaleo expressed this by saying, "* * * We were completely satisfied and now I am completely unsatisfied," and later, "I am interested in having the house moved back; the money is only a slight remuneration for what has been done. The house would still dissatisfy a person."

The appellant also says that the appellees were themselves guilty of a violation of one of the covenants, and, therefore, the bill should be dismissed. It appears from the evidence that the appellees did build a porch on the side of their house, which extends closer than five feet to the line of the appellant's lot. It seems to be doubtful, however, whether this is a violation of the restrictions, which refers to a side street line. The restriction as to proximity to other lots seems to be two feet. The testimony shows that if the porch is a violation, it only violated the two feet rule by one inch which is hardly a substantial violation, and is not comparable with that of the appellant. We do not think such action by the appellees, even if it is a violation, is sufficient for us to hold that they do not come into court with clean hands.

The appellant also claimed that the appellees were guilty of laches in not having acted earlier, before the appellant had proceeded so far with his house, that it would be extremely expensive for him to tear it down. They cite in this connection the leading New Jersey case of *Smith v. Spencer*, 81 N. J. Eq. 389, 87 A. 158. That case is not concerned with money damages, but only with the tearing down of the offending building. The appellees state that they were unable to determine that the house was going to be built in such a way as to cut off their light, air and view until the studdings went up, and thereafter they acted with reasonable promptitude in seeing the builder, the architect, and the owner without

results, and finally went to court. However this may be, the appellant is not injured by their delay, because the chancellor followed the Smith-Spencer case, *supra*, and did not compel him to remove his house. There is no reason to suppose that he would have moved it if earlier notified, because he apparently was determined to disregard everything but the completion of his house, and went ahead with its construction in an even more rapid manner, according to the testimony, after the suit was filed than he had before. The appellees did not have to seek the aid of a court of equity. They had a right to bring suit for damages against the appellant in a court of law, and this is precisely all they got. One cannot build a house in violation of restrictive covenants enforcible by his neighbor, and when his neighbor sues him for damages, say that since that neighbor did not take steps to stop him from building the house, he cannot recover his losses occasioned thereby. In such case, the statute of limitations is the bar to the right to sue unless there is some agreement, or some action which denotes acquiescence and amounts to estoppel. There is no such agreement in this case nor does the short delay of the appellees in bringing their suit estop them from maintaining it. On the contrary, from the very inception of the building, they were apparently waiting to see whether anything would be constructed that would interfere with the proper use of their own home. They stated that a porch, which they first thought was going to be constructed over the line, would not have bothered them, and they would not have objected to it. When they found the truth, they may have been too late to stop the building, but they were certainly not too late to collect for damage done to their property. Under the circumstances the chancellor, as already stated, refused the specific relief, but retained his jurisdiction until he should be in the position to determine all the rights and equities of the parties in order to grant complete relief between them. This seems to be the established rule fully justified by

the decisions. *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795, at page 800.

The chancellor could have heard further testimony to establish damages, but he followed what has frequently been held the better rule, and submitted issues to the law court so that the parties might have the opportunity of having a jury pass upon the questions between them. The power and authority to award issues of fact or law to be sent to courts of law for trial is inherent in courts of equity and is discretionary with the chancellor. *Barth v. Rosenfeld,* 36 Md. 604, at page 613. Chancellor Hanson considered it in the early case of *Hilleary v. Crow,* 1 Har. & J. 542, and said, "* * * inasmuch as the trial by jury is justly considered as far superior to a trial by any one person whatever on written depositions, it has always appeared proper, and has [always] been the practice, to direct issues in important questions of fact." See also *Baltimore & O. R. Co. v. Silbereisen,* 121 Md. 407, pages 417-419, 88 A. 252, 89 A. 102; *Miller v. Pyrites Company,* 71 F. 2d 804, at page 808, and cases there cited. The appellant relies strongly on the case of *Chase v. Winans,* 59 Md. 475. In that case the question was the construction of the will of Jeremiah Townley Chase, a Chief Judge of this Court. After answers were filed, but before any testimony was taken, the plaintiffs in that case asked that issues be framed and sent to a court of law to be tried by a jury. Judge Alvey, speaking for this Court, said that was not a matter of right in any stage of the proceeding, and should only be allowed where the proof before the judge creates doubt or where from a mass of circumstances, it may be difficult to draw a proper conclusion, and he further added that it was to be resorted to simply as a means of informing the conscience of the court, and is not binding upon it. All that case decides is that the chancery court does not have to send up the issues and that its action in not doing so cannot be considered an abuse of discretion, inasmuch as it has full power to decide all such questions. That was made even more clear by a later case which quoted the Chase v.

Winans case as authority. *Baker v. Safe Deposit & Trust Company*, 93 Md. 368, at page 381, 48 A. 920, 49 A. 623.

No objection seems to have been made to the issues in this case, but we may say in passing that they seem to be singularly adapted to produce a fair trial and to be free of prejudice. The first issue requires the jury to find whether or not actual damages were sustained, and the second issue requires them to fix such damages, if they find any. The case was not tried before the chancellor sitting as judge in the law court, but was removed to an adjacent jurisdiction, and tried there before two judges and a jury. The appellant claims that improper evidence was allowed in that case as to values, but he took no appeal from that trial as he was allowed to do by the Code of Public General Laws, 1939, Article 5, Section 5. These provisions were discussed in the case of *Waters v. Waters*, 26 Md. 53, and it is obvious from reading that case that it was intended in a review over any such trials that the same procedings should be taken as in the review of any other trial at law. Nothing of the sort was done in this case, but the appellant now attempts to have the chancellor review some of the testimony taken at the trial, and in effect act as an appellate court, reviewing the action of the Circuit Court for Prince George's County. This, of course, he cannot do, although he may order a new trial if he is dissatisfied with the verdict. *Alexander's Chancery Practice*, 175.

The record from the law court is before him in determining whether or not he will adopt the verdict of the jury. As to that, however, the decision seems to be uniform that he should adopt the verdict, unless there are grave reasons to the contrary. Thus: "Whatever doubt might exist in the mind of this court, as to the sufficiency of proof to support the claim of the complainant, we think the verdict of the jury ought to have weight enough to remove those doubts. Although a verdict under such circumstances is not conclusive upon the court, yet in all doubtful cases it is entitled to great consideration, and should be sustained, unless against the abso-

lute convictions of the court to the contrary." *Hoffman v. Smith,* 1 Md. 475, at page 489. "Such findings are at least entitled to great weight and ought to prevail whenever the Court of equity is not clearly convinced they are erroneous. Mere doubts of their correctness should not prevail against them." *Goodman v. Wineland,* 61 Md. 449, at page 454.

The appellant had his day in court, submitted his case to a jury and did not appeal from the rulings made in that trial. Grave and weighty reasons must now be shown by him to justify the chancellor in refusing to adopt the jury's findings.

We have examined the testimony in the record which purports to have been given at the trial of the issues in Prince George's County, and we are unable to say that there is nothing in it of probative value to support the contention of the appellees. Since that is the case, we are unable to say that the appellant did not have his case fairly presented before the jury. The jury determined, on conflicting evidence, that the appellees were damaged to the extent of $1,500. The trial judges heard and refused a motion for a new trial. It does not appear, under the circumstances, that the chancellor abused his discretion in adopting the verdict of the jury as to damages.

Since we find no error and no abuse of discretion by the chancellor, the decree will be affirmed.

*Decree affirmed, with costs.*