BRIARWOOD APARTMENTS, A Limited
Partnership, Gary VINCENT, Managing Partner
*v.* Blake LIEBLONG and Wife, Sally LIEBLONG;
Danny AKERS and Wife, Pam AKERS

CA 83-343                                     671 S.W.2d 207

Court of Appeals of Arkansas
Division II
Opinion delivered June 27, 1984

96

*John C. Gregg*, for appellants.

*Brazil & Clawson*, for appellees.

GEORGE K. CRACRAFT, Judge. Blake Lieblong and Sally Lieblong are the owners of Lot 30 in Brookwood Subdivision. Appellees Danny Akers and Pam Akers are the owners of Lot 29 in that subdivison. The appellant, Briarwood Apartments, is the owner of Lot 33, Brookwood Subdivision. At the time Brookwood Subdivision was dedicated all of the lots in the subdivision were made subject to a bill of assurances which contained the following restriction:

> LAND USE AND BUILDING TYPE. No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half stories in height. . . .

The appellant also owns a tract of land which adjoins Lots 29, 30 and 33 of Brookwood Subdivision to the north, but is not located in the subdivision or subject to the bill of assurances. In 1982 the appellant began construction of a twelve apartment complex for the elderly and handicapped on its land lying outside the subdivision. At that time despite the protest of the owners within the subdivision it scraped a roadway across Lot 33 for access for the construction workers on its property. In October it put down some crushed stone on the roadway. In early November when the apartment complex was from 80% to 90% complete the appellant began paving the roadway to provide access to the complex for its inhabitants. The appellees commenced this action on

November 24, 1982 seeking injunctive relief against further use of Lot 33 for other than residential purposes. The appellant answered denying that the use it made of the lot was violative of the bill of assurances and raising the affirmative defenses of laches and estoppel. The chancellor ruled that the use of the lot as a roadway connecting with another roadway outside the subdivision was a violation of the restrictive covenant and that the appellees were not barred by delay in enforcing their rights under the bill of assurances. This appeal follows.

Appellant contends that the chancellor erred in concluding that the appellant's use of Lot 33 as a means of access to an apartment complex which was not part of the subdivision violated the bill of assurances. We do not agree.

In *Casebeer* v. *Beacon Realty, Inc.*, 248 Ark. 22, 449 S.W.2d 701 (1970) our court held that the opening of a street or right-of-way across a lot does not violate a covenant restricting the property to residential uses where it is the intention of the owner to designate the property as a private drive to be used only by individuals with land abutting on the passageway and where there is no connection of the proposed right-of-way with any street or property outside the subdivision. While the court did not have before it the precise issue we now address, its discussion of the cases on which it relied leads us to our conclusion. In *Casebeer* the court adopted the rule announced in *Callaham* v. *Arenson*, 239 N.C. 619, 80 S.E.2d 619 (1954) on similar facts. In doing so the *Casebeer* court recognized the clear distinction made by the North Carolina court in the subsequent case of *Long* v. *Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967) in the following language:

We also feel that the *Long* case is readily distinguishable from the case before us, because the construction of this passageway will *not* make it or any street in the subdivision a thoroughfare carrying traffic from another subdivision *contrary to the objectives of the restrictive covenants,* as would have been the case in *Long*. [Emphasis supplied]

This same distinction was recognized by the Supreme Court of Mississippi in *A.A. Home Imp. Co.* v. *Hide-A-Way Lake*, 393 So.2d 1333, (Miss. 1981) which discusses *Casebeer, Callaham* and *Long.* The Mississippi Court declared that the owner of property within a subdivision could construct a beneficial roadway across the land owned by him connecting two streets within the same subdivision without violating the covenant but where the roadway is intended, not as a connecting street within the subdivision, but as one furnishing access to lots and streets outside the subdivision it should be enjoined as violating the bill of assurances. The Mississippi Court stated:

> There is no ambiguity in the expression 'No lot shall be used for other than residential purposes.' Any additional use must be *reasonably incidental* to residential uses and such an inconsequential breach of the covenant as to be in substantial harmony with the purposes of the parties in making the covenants, and without substantial injury to the neighborhood. See *Thompson* v. *Squibb*, 183 So.2d 30 (Fla. D.C. App.2d 1966). *It is obvious that the use of Lot 52 on which there is no residence as a connecting roadway to an adjoining subdivision is not in any sense a residential use or a use incidental thereto.* In this case, the sole purpose of the roadway is to provide a means of ingress and egress between two subdivisions. It destroys the self-contained aspect of the subdivision, and the security that goes along with it. [Emphasis supplied]

In *Thompson* v. *Squibb, supra,* referred to above, it was stated:

> It is obvious that the use of defendant's lot as a connecting street so that there would be access from the streets of the adjoining subdivision to those of the subdivision for whose benefit the covenants were made is not in any sense a residential use or a use incidental thereto.

We conclude that the trial court was correct in finding that the use appellant intended to make of the roadway was violative of the bill of assurances.

The appellant next contends that the chancellor erred in not holding that the appellees were barred by laches and estoppel from asserting the violations of the restrictive covenants. Appellant argues that the appellees were aware for a period of four months of the intended use of Lot 33 and allowed the appellant to spend approximately $300,000 in the construction of the apartment complex before bringing this action. Appellant relies on *Borssuck v. Pantaleo*, 183 Md. 148, 36 A.2d 527, 156 A.L.R. 1140 (1944) and other cases from sister states, some of which are discussed in the annotation to *Archambault v. Sprouse*, 215 S.C. 336, 55 S.E.2d 70, 12 A.L.R.2d 388 (1949), which have held that where the owners of lots in a subdivision sit idly by while large expenditures are made in the erection of a non-conforming dwelling they are barred by the delay from obtaining injunctive relief. This argument is not persuasive because cases relied on are clearly distinguishable.

Here the apartment complex on which the expenditures were made was located on property not subject to the covenants restricting land use. The owners of property in Brookwood Subdivision had no basis to seek injunctive relief against the erection of the apartment building. The application of the equitable doctrines of laches and estoppel must be determined from the facts and circumstances surrounding appellant's use of Lot 33 and the expenditures made on that lot.

The doctrine of laches is based on a number of equitable principles, and here it is based on the assumptions that the party to whom laches is imputed has knowledge of his rights and an opportunity to assert them, that by reason of his delay the adverse party has good reason to believe those rights are worthless to have been abandoned, and that because of a change of conditions or relations during this delay it would be unjust to the latter to permit him to assert them. *Rhodes v. Cissell*, 82 Ark. 367, 101 S.W. 758 (1907). Laches is a species of estoppel and rests upon the principle that if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. *Page v. Woodson*, 211 Ark. 289, 200 S.W.2d 768 (1947). It is the unreasonable delay of the party

seeking relief under such circumstances as to make it unjust or inequitable for him to seek it now. *Langston* v. *Langston,* 3 Ark. App. 286, 625 S.W.2d 554 (1981). These equitable principles are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. The length of time after which inaction constitutes laches is a question to be answered in the light of the facts presented in each individual case.

Here the appellant began construction of the complex in early August 1982 and, with full knowledge of the restrictive covenants obtained in the bill of assurances and of the continuing protest of the use he was making of Lot 33 by the property owners in Brookwood Subdivision, scraped a roadway across Lot 33 for its use in construction of the complex. One appellee testified that he protested three or four times and that there was a city council meeting which the appellant's representative attended where protest was made by a number of persons. One of the appellants testified that despite knowledge of the restrictive covenants and the protest of the owners in the subdivison they scraped and used the roadway anyway. Around the 1st of October the appellant put some crushed stone on the scraped roadway to facilitate access. In early November the appellant constructed gutters and curbing and laid an asphalt roadway across the lot. Appellees brought this action twenty-four days later. The cost of laying the asphalt for the roadway was not shown in the record.

As the appellees argue, there was no way for them to know that the roadway was to be a permanent one rather than a temporary access during construction until the curbing and laying of the asphalt was undertaken. The appellants knew of the restrictions and knew of the appellees' objections to the use they intended to make of it. One who openly defies a known right in the absence of anything to mislead him or to indicate assent or abandonment of opposition to that action by others is not in a strong position to urge as a bar to relief a failure to take the most instant resort to the courts. We conclude that the trial court's ruling that the appellees' right to enforce the

restrictive covenants was not lost by laches, under the circumstances of this case was correct.

Affirmed.

CORBIN and GLAZE, JJ., agree.