2012 Ark. App. 88

**Jerry BRASFIELD, Appellant**

v.

**Glayton JOHNSON, Appellee.**

**No. CA 11–402.**

Court of Appeals of Arkansas.

Jan. 25, 2012.

**18**

Othello C. Cross, Pine Bluff, for appellee.

DAVID M. GLOVER, Judge.

This is the second appeal of this case. Appellee Glayton Johnson filed a petition to quiet title against Jerry Brasfield concerning Lots 14, 15, and the south 12 feet of Lot 12 in Block 14 of the E.J. Waters Addition to the City of Pine Bluff, Arkansas. In the first appeal, Johnson challenged the trial court's dismissal of the case for lack of subject-matter jurisdiction. *Johnson v. Brasfield,* 2010 Ark. App. 321, 2010 WL 1487730. Brasfield did not respond with a brief of his own. We reversed the trial court's decision regarding lack of subject-matter jurisdiction (based upon the case of *Koonce v. Mitchell,* 341 Ark. 716, 19 S.W.3d 603 (2000)), and remanded the case to the trial court. Upon remand, the trial court issued its February 1, 2011 order, granting Johnson's petition to quiet title and also finding that Johnson's petition was not barred by the doctrines of laches or estoppel. Brasfield brings this *pro se* appeal from the trial court's order, contending 1) the trial court properly dismissed this case in the first place because it lacked subject-matter jurisdiction; 2) the trial court erred in failing to apply the doctrine of laches and estoppel to the instant case; and 3) the trial court erred in failing to estop Johnson under the rule of estoppel, parol evidence, and unclean hands, also arguing as a subpoint that the trial court erred in finding that Johnson had proved that he adversely possessed the property in question. We affirm.

For his first point of appeal, Brasfield contends that the trial court properly dismissed this case in the first place because it lacked subject-matter jurisdiction to hear the matter. We do not address the merits of the issue because we decided in the first appeal of this case that the trial court did have subject-matter jurisdiction, and we have determined that the issue is

properly governed by the law-of-the-case doctrine.

In *Turner v. Northwest Arkansas Neurosurgery*, 91 Ark.App. 290, 298–99, 210 S.W.3d 126, 133–34 (2005), our court explained:

> The law-of-the-case doctrine provides that the decision of an appellate court establishes the law of the case for the trial court upon remand *and for the appellate court itself upon subsequent review and is conclusive of every question of law and fact previously decided in the former appeal, and also of those that could have been raised and decided in the first appeal, but were not presented.* The rule is grounded on a policy of avoiding piecemeal litigation. Thus, the law-of-the-case doctrine prevents consideration of an argument that could have been made at trial and also prevents consideration of an argument that could have been raised in the first appeal and is not made until a subsequent appeal. *However, when the evidence materially varies, the law-of-the-case doctrine has no application. The law-of-the-case doctrine is conclusive only where the facts on the second appeal are substantially the same as those involved in the prior appeal and does not apply if there was a material change in the facts.*

(Citations omitted & emphasis added.) In arguing against the application of the law-of-the-case doctrine, Brasfield relies on cases citing the general rule that subject-matter jurisdiction may be raised at any time, whether addressed in the lower court or not. He cites no cases, however, that involve application of the general rule in a law-of-the-case setting. We, too, have found no Arkansas cases that specifically discuss the doctrine of law of the case in the context of subject-matter jurisdiction. However, the law-of-the-case doctrine itself provides that the decision of an appellate court establishes the law of the case and is conclusive of *every question of law and fact previously decided in the former appeal,* and also of those that could have been raised and decided in the first appeal, but were not presented. Jurisdiction is a question of law, *McKenzie v. State*, 2009 Ark. App. 712, 2009 WL 3460714, and we decided the question in the earlier appeal.

Moreover, the research that we have done in resolving this matter, though not exhaustive, convinces us that we are in line with other jurisdictions in concluding that even a question of subject-matter jurisdiction that has been decided in an earlier appeal becomes the law of the case, generally preventing its reconsideration. *See, e.g., Maddox v. Anderson Trucking Servs.*, 834 So.2d 1226 (La.Ct.App.2002); *H.M. v. E.T.*, 89 A.D.3d 848, 932 N.Y.S.2d 364 (2011). As previously mentioned, a material change of facts in the second appeal has been designated by our court as a possible exception to application of the doctrine. Other exceptions have been noted in cases outside Arkansas. For example, in *Maddox, supra*, the Louisiana Court of Appeals discussed the law-of-the-case doctrine in the context of subject-matter jurisdiction:

> The remand order was not meant to re-litigate the exception of lack of subject matter jurisdiction. Rather, it was intended to move this case to "further proceedings," such as a trial on the merits of Mr. Maddox's claims or preliminary matters other than subject matter jurisdiction. The first *Maddox* appeal was a *fait accompli*, so to speak, on the issue of subject matter jurisdiction.

> Our decision is consonant with the "law of the case" doctrine which operates to avoid re-litigation of the same issue, promotes consistency of results in the same litigation and fosters fairness by affording parties one single

opportunity to argue the issue and have it decided. The doctrine operates "to prevent the appellate court from reconsidering its own rulings of law on a subsequent appeal in the same case." *Application of the doctrine is flexible, and we are allowed to deviate therefrom in cases where "it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous."* 834 So.2d at 1228 (emphasis added).

We agree with the Louisiana Court of Appeals's statement that application of the doctrine is flexible and that we are allowed to deviate from it under certain circumstances. Here, it is sufficient to say that Brasfield has not established any material change of facts since the last appeal, and neither has he presented any other convincing argument that would cause us to abandon the law-of-the-case doctrine.

For his second point of appeal, Brasfield contends that the trial court erred in failing to apply the doctrines of laches and estoppel. We disagree.

■ In rejecting the arguments, the trial court explained:

There was no evidence introduced to establish that Mr. Johnson's use of the property was questioned until Mr. Brasfield challenged his ownership. Once Mr. Brasfield advised Mr. Johnson that he had purchased the property and the issue arose, Mr. Johnson filed this action. There was no unreasonable delay in the actions of Mr. Johnson. The defendant has not put forth evidence to establish the elements of his asserted defenses.

Equity cases are reviewed de novo on appeal, and we do not reverse a trial court's findings of fact unless they are clearly erroneous. *Burns v. Stewart,* 2011 Ark. App. 197, 382 S.W.3d 699. A finding is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been made. *Id.* In reviewing a trial court's findings of fact, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

■ Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy. *Hill v. Hill,* 2012 Ark. App. 11, 388 S.W.3d 80. Laches is a species of estoppel and rests upon the principle that if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. *Briarwood Apts. v. Lieblong,* 12 Ark.App. 94, 671 S.W.2d 207 (1984). It is the unreasonable delay of the party seeking relief under such circumstances as to make it unjust or inequitable for him to seek it now. *Id.* These equitable principles are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Id.* The length of time after which inaction constitutes laches is a question to be answered in the light of the facts presented in each individual case. *Id.*

■ Here, the "time delays" on which Brasfield bases the majority of his arguments really have nothing to do with him. He reaches back to prior owners and tries to incorporate those "delays" into his situation. What remains is the fact that Brasfield purchased the lots in 2004 but did not start exercising control over the property until 2006, and Johnson filed his quiet-title action in 2006. We find no clear error in the trial court's conclusion that this is not

a sufficient delay to invoke the doctrine of laches. Moreover, regarding the estoppel argument, the trial court's finding can be fairly said to rest in large part upon a credibility determination, and the trial court apparently did not credit Brasfield's testimony about alleged discussions he had with Johnson prior to purchasing the property. We are simply not left with a definite and firm conviction that the trial court erred in finding no evidence to support Brasfield's arguments regarding the doctrines of estoppel or laches.

For his third point of appeal, Brasfield contends that the trial court erred in failing to estop Johnson under the rule of estoppel, parol evidence, and unclean hands, also arguing as a subpoint that the trial court erred in finding that Johnson had proved that he adversely possessed the property in question. We have addressed the estoppel argument earlier in this opinion, and we do not address the parol-evidence and unclean-hands arguments because Brasfield did not obtain a decision from the trial court on those bases. That leaves Brasfield's challenge to the trial court's finding that Johnson adequately established his ownership of Lot 13 and his adverse possession of Lots 14 and 15, and the south 12 feet of Lot 12 of Block 14 of the E.J. Waters Addition to the City of Pine Bluff. We find no clear error.

Johnson testified that he purchased Lot 13 in 1976 and thought that it covered what he now knows are Lots 14 and 15, and the south 12 feet of Lot 12; that he planted trees and maintained the entire area; and that he treated it as his own from the time of purchase. He also introduced the testimony of several neighbors and other persons who were familiar with his treatment of the property—all of whom testified about his acts of ownership over the property and expressed their long-held belief that he had owned all of the property since the 1976 purchase. The trial court summarized the testimony presented: "Mr. Johnson and his witnesses testified that during the twenty-five (25) plus years since he purchased the land, he had used Lots 14, 15 and the south 12 feet of Lot 12 as his own by trimming the trees, mowing the property, maintaining a garden, raising rabbits, and using the property from the area where the house is located to Fourth Street." We find no clear error in the trial court's determination that the evidence presented established Johnson's adverse possession of the property. Moreover, we agree with the trial court's conclusion that the fact that Johnson did not show payment of taxes on any property other than Lot 13 did not destroy his claim of adverse possession. The trial court appropriately relied on *Schrader v. Schrader*, 81 Ark.App. 343, 348, 101 S.W.3d 873, 877 (2003):

There is no dispute that appellees bought their land in 1976. The testimony presented below established that appellees began adversely possessing the disputed property at that time. On the anniversary of the seventh year, appellees' rights to the property vested. These events occurred many years before the General Assembly contemplated a change in the law regarding adverse possession. As appellees' rights to the disputed property had vested well before 1995, appellees need not comply with the 1995 statutory change. *Cf. Patrick v. McSperitt*, 64 Ark.App. 310, 983 S.W.2d 455 (1998) (appellant did not raise the issue of whether Ark.Code Ann. § 18–11–106 should be given retroactive effect where the adverse possession evolved into ownership before the statute was changed).

In short, we recognize that there was conflicting testimony in this case; howev-

er, it was for the trial court to determine matters of credibility, and we find no clear error in the finding that Johnson established his adverse possession of the property.

Affirmed.

ROBBINS, J., agrees.

PITTMAN, J., concurs.